## Louisiana *v.* Wood.

1. A city in Missouri, having lawful power to borrow money and provide for the payment of her debts, issued her bonds for the purpose of raising the means to pay her interest-bearing debt and the expenses of her government. They recite that they are issued under the authority of her charter, and an ordinance pursuant thereto passed Jan. 8, 1867. Although not actually executed until July 16, 1872, they were antedated as of Jan. 1, 1872, for the purpose of evading a law of the State passed March 28, 1872, which enacts that no bond thereafter issued by any county, city, or incorporated town, for any purpose whatever, shall be valid or negotiated until it is registered by the State auditor, and his certificate of such registration indorsed thereon. A., believing that the bonds were what on their face they purported to be, and, therefore, obligatory on the city, bought them in good faith from her authorized agent, and the money paid therefor went into her treasury. *Held,* 1. That the city was in the market as a borrower, and received the money in that character notwithstanding the transaction assumed the form of a sale of her securities, upon which, they being defectively executed, a suit could not be maintained. 2. That A. is entitled to recover the money paid, with interest thereon, from the time the obligation of the city to pay was denied.

2. The power of the city conferred by her charter to borrow money to take up her bonded indebtedness was not repealed by the eleventh section of the act of March 28, 1872, which enacts that "any county, city, or town that desires to place its outstanding indebtedness, under the provisions of this act, may do so by funding the same, and issuing new bonds in lieu of the present ones, upon such terms and bearing such interest, with such length of time to run, as may be agreed upon between the county, city, or town and the holders of its bonds."

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

Upon the facts found by the court below this case is as follows : —

The city of Louisiana, Missouri, had authority in law to borrow money, at any rate of interest not exceeding ten per cent per annum, and to provide for the payment of its debts. On the 8th of January, 1867, an ordinance was passed by the city council creating the office of "city fund commissioner." It was made the duty of this officer to sell the bonds of the city for the purpose of funding or paying the indebtedness of the city, and apply the proceeds to the purchase of outstanding warrants and bonds past due, or not having more than three

years to run.   By this ordinance he was limited in his sales to a price not less than ninety-five cents on the dollar of the par value of five-year bonds, and ninety cents for those running ten years.   On the 1st of March, 1871, the fund commissioner reported to the city council that the bonded indebtedness of the city was about $150,000, bearing interest mostly at the rate of ten per cent per annum, and that about $100,000 would mature that year, and in the years 1872, 1873, 1874, and 1875. Upon this report an ordinance was passed authorizing the commissioner " to negotiate the bonds of the city for the purpose of raising money to liquidate the city debt, for a period not exceeding fifteen years, and at a rate of discount not exceeding fifteen per cent."

On the 28th of March, 1872, the General Assembly of that State passed " An Act to provide for the registration of bonds issued by counties, cities, and incorporated towns," sects. 4 and 11 of which are as follows : —

" SECT. 4. Before any bond hereafter issued by any county, city, or incorporated town, for any purpose whatever, shall obtain validity or be negotiated, such bond shall first be presented to the State auditor, who shall register the same in a book or books provided for that purpose, in the same manner as the State bonds are now registered, and who shall certify by indorsement on such bond that all the conditions of the laws have been complied with in its issue, if that be the case ; and, also, that the conditions of the contract under which they were ordered to be issued have also been complied with, and the evidence of that fact shall be filed and preserved by the auditor ; but such certificate shall be *prima facie* evidence only of the facts therein stated, and shall not preclude or prohibit any person from showing or proving the contrary in any suit or proceeding to test or determine the validity of such bonds, or the power of any court, city or town council, or board of trustees or other authority, to issue such bonds ; and the remedy of injunction shall also lie at the instance of any tax-payer of the respective county, city, or incorporated town, to prevent the registration of any bonds alleged to be illegally issued or founded under any of the provisions of this act."

" SECT. 11. Any county, city, or town that desires to place its outstanding indebtedness, under the provisions of this act, may do so by funding the same, and issuing new bonds in lieu of the pres-

-ent ones, upon such terms and bearing such interest, with such length of time to run, as may be agreed upon between the county, city, or town and the holders of its bonds : *Provided, however,* that the contract for funding, with the terms of the same, shall be assented to by a majority of the qualified voters of such county, city, or town, at a general or special election held therefor, and at least thirty days' public notice of the same shall be published in every paper in the county, city, or town, and when there are none, then by four printed handbills put up in the most public places in every voting precinct in such county, city, or town."

Other sections make special provision for the assessment and collection of taxes to pay the principal and interest of all bonds registered in accordance with the act.

On the 16th of July, 1872, after this act went into effect, the city, for the purpose of raising money to pay its interest-bearing debts and the expenses of its government, caused to be executed by its proper officers, and sealed with its corporate seal, twenty-one bonds, payable to bearer on the 1st of January, 1887, for $1,000 each, with coupons attached for semi-annual interest at the rate of ten per cent per annum    These bonds contained recitals that they were issued under the authority of the charter and the ordinance of Jan. 8, 1867.   Although not actually executed until July 16, 1872, the city, " for the purpose of evading the provisions of said registration law, and with the intent to make it falsely appear that said bonds were not subject to the requirements of said law, caused said bonds to be antedated as of the first day of January, 1872, and caused it to be falsely stated in them that they were signed, countersigned, and sealed on the day last named."   The bonds thus executed were, without being registered, placed by the fund commissioner in the hands of a respectable stock and bond broker in St. Louis, to sell for the account of the city.   On the 25th of August, 1873, the broker and agent sold and delivered to the plaintiff below, now the defendant in error, ten of the bonds at ninety per cent of their face value, and on the 1st of September nine more at the same rate.   On the 24th of June he sold to Lewis Dorsheimer one bond, and on the 24th of February, 1874, another to John F. Gibbons, at the same price. The price was in each case paid to the broker in money, the

purchasers all the time being ignorant of the fact that the bonds were actually executed after the registration law went into effect, or that the recitals were not in all respects true. They bought the bonds, and paid for tnem in good faith, believing them to be what on their face they purported to be, and obligatory on the city. The broker, with the assent of the fund commissioner, retained from the money realized on the sales five per cent on the par value of the bonds sold, for his services, and paid the residue to the commissioner, who, with the sanction of the city council, used part in the payment and redemption of matured bonds, coupons, and warrants of the city, and handed over the rest to the city treasurer. The fund commissioner reported the sales of the bonds to the city council, and charged himself with a sum equal to eighty-five per cent of the par value as the sum realized by him, making no mention of the amount retained by the broker for services. His accounts were examined and approved by the city council, and the bonds, coupons, and warrants taken up by his payments were destroyed. The interest on the bonds thus sold was met in full by the city as it matured until Jan. 1, 1876, when only forty per cent was paid, and on the 1st of July of that year the city declared its purpose not to pay either principal or interest, claiming that the bonds were invalid because not registered.

The bonds bought by Dorsheimer and Gibbons were transferred to the plaintiff. After the city had repudiated its obligation, he offered to return the whole twenty-one bonds, and demanded the repayment of the several sums paid for them. This being refused, the present suit was brought to recover back the money so paid. Upon the foregoing facts the court gave judgment against the city for $18,900, and interest at the rate of six per cent per annum from the time the payment of the interest on the bonds was stopped. To reverse that judgment, the city brought the case to this court, and the error assigned is that the facts found are not sufficient to support the judgment.

*Mr. David P. Dyer* for the plaintiff in error.

*Mr. John D. S. Dryden,* contra.

MR. CHIEF JUSTICE WAITE, afte stating the facts, delivered the opinion of the court.

That the bonds in question are invalid, is conceded. Such is the effect of *Anthony* v. *County of Jasper* (101 U. S. 693), decided at the last term. It is equally true that the legal effect of the transactions by which the plaintiff and his assignors got possession of the bonds was a borrowing by the city of the money paid for what was supposed to be a purchase of the bonds. As the broker through whom the business was done was the agent of the city and acting as such, the case, so far as the city is concerned, is the same as though the money had been paid directly into the city treasury and the bonds given back in exchange. The fact that the purchasers did not know for whom the broker was acting is, for all the purposes of the present inquiry, immaterial. They believed they were buying valid bonds which had been negotiated and were on the market, when in reality they were loaning money to the city, and got no bonds. The city was in the market as a borrower, and received the money in that character, notwithstanding the transaction assumed the form of a sale of its securities.

The city, by putting the bonds out with a false date, represented that they were valid without registry. The bonds were bought and the price was paid under the belief, brought about by the conduct of the city, that they had been put out and had become valid commercial securities before the registry law went into effect. It would certainly be wrong to permit the city to repudiate the bonds and keep the money borrowed on their credit. The city could lawfully borrow. The objection goes only to the way it was done. As the purchasers were kept in ignorance of the facts which made the bonds invalid, they did not knowingly make themselves parties to any illegal transaction. They bought the bonds in open market, where they had been put by the city in the possession of one clothed with apparent authority to sell. The only party that has done any wrong is the city.

In *Moses* v. *MacFerlan* (2 Burr. 1005), it is stated as a rule of the common law, that an action "lies for money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition." The present action can be

sustained on either of these grounds. The money was paid for bonds apparently well executed, when in fact they were not, because of the false date they bore. This was clearly money paid by mistake. The consideration on which the payment was made has failed, because the bonds were not, in fact, valid obligations of the city. And the money was got through imposition, because the city, with intent to deceive, pretended that the false date the bonds bore was the true one. While, therefore, the bonds cannot be enforced, because defectively executed, the money paid for them may be recovered back. As we took occasion to say in *Marsh v. Fulton County* (10 Wall. 676), "the obligation to do justice rests upon all persons, natural or artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation."

It is argued, however, that, as the city was only authorized by law to borrow money at a rate of interest not exceeding ten per cent per annum, the money cannot be recovered back, because a sale of the bonds involved an obligation to pay interest beyond the limited rate, and the borrowing was, therefore, *ultra vires*. There was no actual sale of bonds, because there were no valid bonds to sell. There was no express contract of borrowing and lending, and consequently no express contract to pay any rate of interest at all. The only contract actually entered into is the one the law implies from what was done, to wit, that the city would, on demand, return the money paid to it by mistake, and, as the money was got under a form of obligation which was apparently good, that interest should be paid at the legal rate from the time the obligation was denied. That contract the plaintiffs seek to enforce in this action, and no other.

Again, it was contended that, as the money in this case was borrowed to take up bonded indebtedness, the transaction was *ultra vires*, because the effect of the eleventh section of the act of 1872 was to repeal all earlier laws authorizing the borrowing of money for such purposes. We do not so understand that section. The old power to borrow, which the charter gave, was left unimpaired, but, under this new provision, registered bonds might be issued in place of old ones, if the city

and the holders of the old bonds could agree on terms and the people gave their assent. In this way the holders of old bonds might avail themselves of the special tax which the law of 1872 required should be levied to meet the obligation of all registered bonds; but the city was not prevented from borrowing money to pay old bonds if it saw fit to do so, or if it could not agree on the terms of exchange.

The judgment below was right, and it is consequently

*Affirmed.*