TRAVELERS' INS. CO. v. MAYOR, ETC., OF JOHNSON CITY.

(Circuit Court of Appeals, Sixth Circuit. February 12, 1900.)

No. 732.

MUNICIPAL CORPORATIONS—VOID BONDS—RECOVERY BY PURCHASER ON QUANTUM VALEBAT.

A purchaser, in the market, of negotiable bonds payable to bearer, and unindorsed, issued by a city to a railroad company of another state, to whom it had no power to issue the bonds, in payment of a subscription to the company's stock, which it had no power to make, although it had power to subscribe for the stock of a domestic corporation, and to issue its bonds in payment therefor, cannot recover from the city the amount paid for such bonds as money had and received to the city's use and

benefit on the ground that the stock had been delivered and retained, and the railroad and a depot constructed, which were the conditions upon which the subscription was made. In such case the stock was void in the hands of the city for want of power on its part to become a stockholder; and the railroad and depot, built on lands owned by the company, did not become property of the city, or confer upon it any such direct benefits as could raise an implied promise to pay therefor independently of its void contract.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This was a suit at law by the Travelers' Insurance Company to recover from the mayor and aldermen of Johnson City $50,000 and interest from January 5, 1892, as money had and received to the use of the defendants. The case made in the declaration was: That under the act of the general assembly of the state of Tennessee, providing: "That any county, incorporated city or town, may become a stockholder in any railroad company incorporated under the general laws of this state, to an amount not exceeding, in the aggregate, one-tenth of its taxable property, by complying with the requirements of this act" (Laws 1887, c. 3, § 1), and which provided in its twelfth section: "That when such subscription shall become due and payable, as provided in section eleven of this act, the county, or city, or town making the subscription shall make and execute its coupon bonds for the amount of such subscription, payable not more than twenty years after date, and bearing interest at such rate as may be agreed upon, not exceeding six per cent. per annum, payable semi-annually, and deliver the same to the railroad company, provided, that such county, city or town may pay such subscription in cash at maturity, if it shall so elect,"—the Charleston, Cincinnati & Chicago Railroad Company, on December 30, 1890, applied to the defendant in error to subscribe $75,000 to the capital stock of said railroad company, the subscription to be paid in the coupon bonds of the defendant. That an election was held on January 30, 1890, pursuant to law, and under orders of the mayor and board of aldermen. That the sheriff made his return, showing that more than three-fourths of the electors voting voted for the subscription, and that thereupon the defendant made the subscription accordingly, and resolved that it be paid in coupon bonds of the town. That the bonds issued were in the form following:

"State of Tennessee, County of Washington, Corporation of Johnson City:

"Know all men by these presents, that the corporation of Johnson City, in the county of Washington, state of Tennessee, acknowledges itself indebted and firmly bound to the Charleston, Cincinnati & Chicago Railroad Company, or bearer, in the sum of one thousand dollars, lawful money of the United States of America, and for value received hereby promises to pay to said company, or bearer, the sum of one thousand dollars at the National Bank of Deposit in the city of New York, state of New York, in twenty years after date, with interest thereon from date hereof at the rate of six per cent. per annum, payable semiannually, on the first days of May and November in each and every year, on presentation and delivery of coupons hereto annexed, and duly signed by the recorder of Johnson City; for the performance of all which the taxable property of said Johnson City is irrevocably pledged, pursuant to an act of the general assembly of the state of Tennessee, entitled 'An act to enable the counties and incorporated cities and towns to subscribe to the capital stock of any railroad company incorporated under the general laws of this state, in the mode prescribed therein, and to provide for the payment of such subscriptions,' approved February 17, 1887, and also an act passed February 28, 1887, approved March 2, 1887, authorizing Johnson City to issue bonds to an amount not exceeding seventy-five thousand dollars. This bond is one of a series of seventy-five bonds of like tenor, date, and amount herewith, issued by virtue of said above-named statutes, and in issuing same all of the provisions and requirements of each of said statutes have been strictly fulfilled and complied with. In witness whereof the mayor and the recorder of the corporation of Johnson City, Tennessee, have hereunto signed their

names, and the same has been countersigned by the board of trustees of the sinking fund of said town, at said Johnson City, on the first day of May, A. D. 1890.

"——————,
"Mayor.

"——————,
"Recorder.
"——————,
"——————,
"——————,
"Board of Trustees of the Sinking Fund."

That by the contract of subscription the bonds were to be deposited in the First National Bank in escrow, to be delivered to the railroad company, or its order, upon presentation of a certificate signed by the mayor of the city and the chief engineer of the railroad company. That the three conditions of the subscription, which were the delivery of the stock, the construction of the railroad, and the erection of a railway station, had been complied with. That the railroad and station were completed, and the stock issued in accordance with the contract, and the bonds were delivered to the railroad company upon proper certificate. That the stock issued to the amount of $75,000 has ever since been held by the defendants. That, soon after the delivery of the bonds by the city to the railroad company, the same were put by the railroad company upon the market for sale, and the plaintiff, relying upon the representations made on the face of the bonds that all the requirements of law had been strictly complied with in their issue, purchased $50,000 of the bonds, and paid $50,000 in lawful money for the same without notice of any infirmity in the bonds.

The declaration further shows that, after paying the interest coupons on these bonds for several years, the defendants filed a bill in the chancery court of Washington county, Tenn., against the railroad company and the plaintiffs and others, in which it sought to have the bonds declared void on the various grounds therein set up; that upon a final hearing of the cause the chancellor entered a decree, on March 13, 1895, adjudging the bonds to be void in the hands of bona fide purchasers, upon the ground that the Charleston, Cincinnati & Chicago Railroad Company was not a corporation under the laws of the state of Tennessee, but was a South Carolina corporation; and that $75,-000 exceeded one-tenth of the taxable property of Johnson City, in violation of the terms of said statutes authorizing the subscription. On appeal this was affirmed by the court of chancery appeals. Plaintiff then appealed to the supreme court of Tennessee, which also affirmed the decree of the chancellor (44 S. W. 670), adjudging that said bonds were invalid and void upon the grounds stated, and enjoining their collection. The declaration avers further that the corporation to which this subscription was made was a Tennessee corporation, and not a corporation of South Carolina; that in fact there were two corporations, and that the application made by the railroad company for the subscription was made in the name of the Tennessee corporation. The bill further avers that the defendants were estopped by their recitals to deny that this was a Tennessee corporation, or that the statutory limit of indebtedness had been exceeded. The prayer of the bill is for the amount paid by plaintiff for the bonds, on the ground that the defendants have received this amount in value to their benefit. The declaration was demurred to on the ground that it did not state a cause of action, and the demurrer was sustained. The plaintiff not wishing to plead further, judgment was entered for the defendants, and that judgment is now here for review.

T. S. Webb, for plaintiff in error.

Isaac Harr (Burrow Bros., on the brief), for defendants in error.

Before TAFT, LURTON, and DAY, Circuit Judges.

TAFT, Circuit Judge (after stating the facts as above). The averments of the declaration that the railroad company whose stock

was subscribed for by the defendants was a Tennessee corporation, and that the plaintiff was a bona fide purchaser for value, without notice of any infirmity in the bonds, and that the defendants were estopped by the recitals in their bonds from denying that the railroad company was a Tennessee corporation, lend no legal force to it, in the face of its other averments, which show that those very questions of fact and law were decided adversely to the plaintiff in an action to which the plaintiff and defendants were adversary parties, and in which the question of the validity of these bonds was the sole matter at issue. The question for our consideration here is, therefore, whether one who, for full value, purchases in the market negotiable bonds payable to bearer, and unindorsed, issued by a municipal corporation to a railroad company of another state, to whom it has no power to issue the bonds, in payment of a subscription to the company's stock to which it has no power to make a subscription, after the railroad has been built, and the depot has been constructed on the company's ground, and the certificates for the stock subscribed for have been delivered to the municipal corporation, all in accordance with the condition of the subscription agreement, may recover from the municipal corporation the money paid by it in open market for the bonds, on the ground that that amount has been expended in conferring upon the city the benefit of the railroad and the depot and the stock, when it further appears that the corporation has power to make subscriptions for the stock of a domestic corporation, and to pay for the same in its bonds. We think the question must be answered in the negative. The cause of action is for money had and received to the use of the city. Such an action is based, not on an express or implied contract, but upon an obligation which the law supplies from the circumstances, because, ex æquo et bono, the defendant should pay for the benefit which he has derived at the expense of the plaintiff. It is an obligation which the law supplies, because, otherwise, it would result in the unjust enrichment of the defendant at the cost of the plaintiff. It is an obligation which arises only when the defendant has received money or property from the plaintiff and appropriated the same to his own use, either when he might have elected not to take it, or, having the power to do so, might return the benefit thus conferred to the plaintiff, and fails to do so. In this case the three benefits conferred on the plaintiff are: (1) The issuing of the stock; (2) the construction of the railroad; and (3) the building of the depot. As to the first, it has been conclusively adjudged by the supreme court of Tennessee in the case of Johnson City v. Charleston, C. & C. R. Co., 100 Tenn. 138, 44 S. W. 670, in which the plaintiff and the defendants were adversary parties, that the city had no power to subscribe to the stock of the railroad company. This being so, the city did not become a stockholder in the railroad company, and did not receive the benefit of the stock purporting to be issued. The contract of subscription was utterly void, and the certificate was but waste paper. It imposed no obligation upon the railroad company or its stockholders; it conferred no benefit upon the city. The case of Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198, leaves no

doubt on this point. There a national bank, without power to do so under the national banking laws, purchased stock in a savings bank of the state of California. It was held that, in the absence of power to own the stock, the national bank did not become a stockholder, and was not liable to pay the assessment upon the stock for the benefit of creditors, although in that case it had received, and had not returned, dividends issued to it as a stockholder. The other benefits said to have been conferred upon the city were the construction of the railroad and the building of the depot. As the railroad and the depot were constructed on the land of the railroad company, they did not go into the possession of the city as its property. Had the railroad company, without any subscription by the city, built its railroad through the city, and erected its station there, it certainly could not be claimed that this would have given the railroad company a right of action against the city for the value of the benefits conferred on the city by such construction, however great those benefits might have been in adding to the prosperity of the city and its inhabitants. In the absence of an express agreement to pay for such a benefit, no tacit agreement to do so can be inferred. Where the conferring of the benefits was induced by an express agreement which is void, the law will not supply an obligation to pay on the ground of unjust enrichment as a quasi contract, unless, in the absence of the express agreement, a real, but tacit, contract could have been inferred from the circumstances. The benefit indirectly conferred on one man's property by the improvement of the land of another is not an unjust enrichment of the other. Hence, ex aequo et bono, no obligation in law to pay for it arises. The case in hand is not distinguishable in principle from that of Railroad Co. v. Bensley, 6 U. S. App. 115, 2 C. C. A. 480, 51 Fed. 738, 19 L. R. A. 796, decided by this court, in which Mr. Justice Brown delivered the opinion. In that case the owners of lots in Chicago in close proximity to the lot on which it was proposed to construct the Chicago Board of Trade Building entered into a written contract with the owner of the lot by which they agreed that, if he would sell the lot to the board of trade at a low price, so as to induce the board of trade to buy it, and if the board of trade should construct its building thereon within a certain time, they would pay the owner of the lot, each of them, a certain sum of money. The owner of the lot accordingly sold it to the board of trade at the price named in the agreement, but the building was not constructed within the time fixed by the agreement. Suit was brought by the owner to recover from the contractors the amounts stipulated to be paid in the contract after the building had been constructed. The court held that time was of the essence of the contract, and was made a condition precedent to the obligation to pay, and that, therefore, no recovery could be had under the contract. The plaintiff then sought to recover on a quantum valebat, and it was held that the benefit conferred was not one which created an obligation on the part of the lot owners to pay, even though it appeared that, owing to the erection of the Board of Trade Building, they had been enabled to sell their land at a largely increased price. The court said:

"Had the defendant received a benefit from the performance of this contract to which he would not have been entitled had the contract not been made, the result might have been different; but, as a matter of fact, it received no benefit from the erection of this building which did not accrue to other owners of neighboring property who did not sign the contract or subscribe in aid of the purchase of the lot, and as to such persons it would not be claimed that a liability arises. Its acquiescence in the completion of the building is immaterial, since it had no right to interfere. It is, then, only upon the basis of the special contract to pay that an action will lie, and this contract not having been performed by the plaintiff, there can be no recovery."

Mr. Justice Brown mentioned, as a most satisfactory case upon this point, Railway Co. v. Thompson, 24 Kan. 170, and said:

"This was an action upon certain bonds issued by the city of Parsons in aid of the construction of the plaintiff's road, and subject to a condition that the plaintiff should 'have its road constructed and in operation on or before the first day of July, 1878.' It was held that time was of the essence of this contract, and that the failure of the plaintiff to complete the road by the day named was fatal to a recovery, notwithstanding the road was completed shortly after that, and the city received the benefit of it. In delivering the opinion of the court, Mr. Justice Brewer, now of the supreme court of the United States, observed: 'Nor is this a case of part performance by one party and the acceptance by the other of the proceeds of such performance. The work done by the company was upon its own grounds. It owns the road absolutely and entirely. It has parted with nothing which the city has received. The city has accepted and appropriated none of its labor and none of its materials. It has received the benefit of the work in no other sense than every individual in the community, and in no other way than of one person receiving benefit from his neighbor's improvement of his own property.'"

While these were cases in which the plaintiff failed to recover on the express contract, not because it was ultra vires and void, but because the plaintiff failed to comply with a condition precedent in such contract, the principle upon which they were placed is entirely applicable to the case at bar. This is made apparent by the language of Mr. Justice Jackson in delivering the opinion in Hedges v. Dixon Co., 150 U. S. 182–186, 14 Sup. Ct. 71, 37 L. Ed. 1044. There a county had issued bonds in aid of a railroad in excess of its authority, and the holders of the bonds filed a bill in which they asked from the court the relief of cutting down the obligation of the bonds proportionately so as to bring it within the lawful amount. The supreme court held that the relief could not be granted, and, referring to the cases of Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153, and Read v. City of Plattsmouth, 107 U. S. 568, 2 Sup. Ct. 208, 27 L. Ed. 414, in which it had been permitted to bondholders of bonds issued without authority to recover from the municipal corporation issuing the bonds the amount of money received by it and expended by it for lawful purposes as money had and received to its use, the court said:

"The circumstances and conditions which gave the holders of the bonds an equitable right in those cases to recover from the municipality the money which the bonds represented do not exist in the case under consideration, where the county received no part of the proceeds of the bonds, and no direct money benefit, but merely derived an incidental advantage arising from the construction of the railroad, upon which advantage it would be impossible for the court to place a pecuniary estimate, or to say that it would be equal to such portion of the bonds in question as the county could lawfully have issued."

For these reasons we think that there is no ground upon which to base a recovery for money had and received to the use of Johnson City.

The cases relied upon by the plaintiff are Read v. City of Plattsmouth, 107 U. S. 568, 2 Sup. Ct. 208, 27 L. Ed. 414; Chapman v. Douglass Co., 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378; Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238; Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153; Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659. It is contended that they sustain the view that money paid for the benefit of the city on the faith of the issue of invalid bonds may be recovered in an action for money had and received. It will be found that, in every case cited but one, the city or county or municipal corporation which issued the bonds received the money or labor or material furnished, and that it was expended in improving the property of the city or other corporation in a manner in which the city had power to improve its own property. In Hitchcock v. Galveston, supra, the benefit conferred upon the city was the building of sidewalks, which the city had the right to build and pay for, but which, it was found, it had no right to pay by issuing bonds. In Louisiana v. Wood the money received for the bonds was used partly by the city in payment and redemption of matured bonds and coupons and warrants of the city, lawfully issued, and part of it was deposited in the city treasury. In Parkersburg v. Brown, which is the exception, the money which was received for the bonds was used to purchase land and to erect a manufacturing establishment, the operation of which it was supposed would benefit the city. The bonds were declared void for want of power in the city to aid private manufacturing establishments. The relief granted by the court was not to hold the city as for money had and received, but to follow the property into which the money had been put, and to sell the property, and distribute the net proceeds thereof to those with whose money the property had been purchased and improved. In Chapman v. Douglass Co., supra, a county in Nebraska bought land upon which to erect a poor house and farm, and in payment therefor issued notes for four equal annual installments of the purchase price, and gave a mortgage to secure the payment of the notes. It was decided by the supreme court of the state that the county could not bind itself to pay the purchase money by notes, or to secure it by mortgage upon the property, but its power was limited to a payment in cash, and the levy of an annual tax to create a fund wherewith to pay the residue. It was held that, the contract being unauthorized only so far as it related to the time and mode of paying the purchase money, and the title to the land having passed by the conveyance, the county held the title as trustee for the benefit of the vendor, and that, unless the sum due on the purchase money was paid within a reasonable time, the county might be required to execute a deed releasing to the vendor all the title acquired under his deed. In Read v. City of Plattsmouth, the money paid for the bonds was used by the city of Plattsmouth in the construction of a high school building. The power of the city to issue bonds to build a high school was questioned, and by a subsequent

act the bonds issued were validated by the legislature. At the time the bonds were issued it could not lawfully issue them in the amount in which they were issued. It was held that the city, having taken the money and put it into a school house, which it owned, was bound by the force of the transaction to repay to the purchaser of its void bonds the consideration received and used by it, or its lawful equivalent, and that, therefore, the enabling act validating the bonds only recognized an existing moral and legal obligation, and was valid. It thus appears that in each of the cases, except Parkersburg v. Brown, the benefit received by the municipal corporation was money paid to it or property delivered into its actual possession under such circumstances that, had no express contract been attempted, a tacit contract might have been inferred. In Parkersburg v. Brown the money paid was followed, as in rem, into the thing bought with it.

It follows that the judgment of the court was correct, and it must be affirmed, with costs.