OHIO COUNTY, KY., v. BAIRD

(Circuit Court of Appeals, Sixth Circuit. July 13, 1910.)

No. 2,033.

1. COUNTIES (§ 171*)—NOTES—DEFENSES—WANT OF CONSIDERATION.
    A note purporting to be signed by a county fiscal court may be defended against for want of consideration, whether it was to take the place of a note paid or for claims against the county not allowed by the proper authority.
    [Ed. Note.—For other cases, see Counties, Dec. Dig. § 171.*]

2. COUNTIES (§ 50*)—FISCAL COURTS—POWERS—DELEGATION.
    Under St. Ky. 1894, § 1834, vesting the corporate powers of counties in the fiscal courts, a power from a court to two of its members to ascertain the amounts of claims held against a county by plaintiff, and to settle with him, was an invalid attempt to delegate power involving the exercise of discretion confided to the court, in the absence of proof of the origin and nature of the claims.
    [Ed. Note.—For other cases, see Counties, Cent. Dig. § 61; Dec. Dig. § 50.*]

3. EVIDENCE (§ 178*)—SECONDARY EVIDENCE—LOST CLAIMS.
    On proof of loss of claims against a county, secondary evidence is admissible in a suit to recover on them.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 580–594; Dec. Dig. § 178.*]

In Error to the Circuit Court of the United States for the Western District of Kentucky.

Action by A. B. Baird against Ohio County, Ky. Judgment for plaintiff, and defendant brings error. Reversed, and new trial awarded.

Ernest Woodward, for plaintiff in error.

R. W. Slach, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

WARRINGTON, Circuit Judge. Baird, a citizen and resident of Oklahoma, recovered judgment in the court below against the county of Ohio, Ky., on the following instrument:

"On or before the first day of August, 1894, the Ohio county fiscal court and Ohio county promises to pay to the order of A. B. Baird at the Beaver Dam Deposit Bank five thousand eight hundred and ninety-two dollars and forty-three cents ($5,892.43), out of the first of the county levy of 1894, collected by the sheriff of said county as per order of said court made at its January, 1904, term.          Ohio County Fiscal Court; and
                                        "Ohio County Court,
                                              "By Jno. P. Morton, G. W. Martin."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
    181 F.—4

The parties stipulated that the issues of fact might be tried and determined by the court without the intervention of a jury. The court stated its findings of fact and conclusions of law separately; and the present proceeding in error was brought to reverse the judgment.

The controlling issue is whether the county ever received any consideration for the note. By the second paragraph of the original petition it was alleged that the county was indebted to Baird on "account of claims and interest, which he held against said county" exceeding $11,000, and that on the 6th day of January, 1894, at a regular term of the fiscal court of the county, the court made an order appointing two commissioners to settle with plaintiff and execute a note of the county and court for the sum ascertained and payable as stated in the note. A demurrer was sustained to this portion of the petition, on the ground that it did not state that the indebtedness "arose from the construction, repair or maintenance of some one or more of the utilities" of the county which were within the jurisdiction and control of the fiscal court. An amendment was filed, stating that prior to January 6, 1894, the fiscal court had employed persons to make repairs upon property in and belonging to the county, to wit:

"The jail, courthouse, and poorhouse building, and to build and repair bridges and do work upon the public roads in said county and to care for and maintain the sick paupers therein, and agreed to pay said persons therefor a sum exceeding $11,000, and prior to said date had made various and numerous orders for payment to them of said sums all of which orders and vouchers therefor had been duly assigned, transferred, and delivered to this plaintiff prior to said date."

By the answer it is denied that on January 6, 1894, the county was indebted to Baird in the sum alleged or in any other sum "in excess of $5,580.85." The allegations of the amendment to the petition just stated are denied, and it is denied that Baird delivered to the commissioners any vouchers or evidences of indebtedness in excess of $5,-580.85. It is admitted by the answer that plaintiff held claims amounting to the sum last mentioned, and that two commissioners to whom they had been referred delivered to plaintiff a note of the Ohio county fiscal court, signed by the commissioners, for the sum stated, with interest from January 10, 1894, until paid, and that plaintiff accepted the note in full settlement of all claims against the county.

The note sued on differs in form from the one thus admitted in that the latter bore date of execution, and was for a less amount. There is conflict in the testimony concerning these two notes, the county claiming that the total indebtedness equaled only the face of the note admitted, and that the note sued on was given in lieu of the first one in consequence of certain false and fraudulent representations made to the commissioners by plaintiff to the effect that the first note was irregular and informal and not capable of being negotiated or discounted; that the second note was drawn so as to include the interest from the date of the first note until the day fixed for payment of the second, August 1, 1894, or $5,892.43; that plaintiff promised to surrender the original note but failed to do so, representing to the fiscal court later that the first note had been lost or destroyed; and,

further, that plaintiff in fact discounted the first note and so obtained the only money that was due to him from the county, and the county subsequently paid that note in full. The suit on the note in issue was not commenced for more than 13 years after maturity, and much is said in explanation of this delay. The court below found against the county on the question of fraud.

It must be conceded that the county by its answer, as we understand it, places itself in the anomalous position of having paid the very note that it alleges was to have been surrendered in lieu of the note in suit. The note which was admittedly paid does not appear to have been offered in evidence. But since it is undisputed that two notes were delivered as before pointed out, and that Baird received in money the face value less discount of the note subsequently paid by the county, it is clear that the note in suit is open to the defense of want of consideration, no matter whether it was to take the place of the note paid or was given for claims made against the county, and not sanctioned by any agency competent to commit the county for their allowance or payment.

So far as we shall consider the defense of want of consideration, the test will be found in the state of proof as to the nature and history of the claims against the county, which it is alleged Baird surrendered. Apparently it was as necessary to require proof in support of the averments of the amendment to the petition concerning these claims, as it was to sustain the demurrer to the original petition for lack of such averments; for a copy of the note was set out and averment of its execution and delivery was made in the petition. In referring to those claims in the opinion below, which was handed down with the findings of fact, it was said:

"The plaintiff introduced no direct testimony thereon, and it is objected that there is such a failure of proof as must result in a judgment for the defendants."

And the most that is claimed on behalf of plaintiff in this regard is that he testified:

"Q. State to the court the amount of the claims which you held against Ohio county at the date of the execution of this note? A. The claims and interest amounted to something over $11,000, and those claims were carefully gone over by the committee that settled with me, and received and executed those notes at one and the same time."

Manifestly this does not tend to show either the nature of the claims or whether they originated in any order of the fiscal court.

As we understand the opinion, the court based its findings touching the character and sufficiency of the claims upon "presumptions arising from the other testimony." The other testimony is alluded to in this way:

"First, that the properly authorized agents of the county executed a note for the amount sued on; second, that such action, especially at this late day, should be presumed to have been proper and to have been based upon the ascertainment of all the facts necessary to warrant that action; and, third, that in January, 1894, the claims were surrendered to the defendant in lieu of the notes the county then executed. * * *"

Now, one of the important questions of law urged in this court is whether the note was executed by "properly authorized agents"; and one of the vital issues of fact in the court below was whether claims in excess of the amount of the first note were in truth surrendered and above all what kinds of claims were comprised in the alleged excess. Turning to the only order made by the fiscal court which purports to have authorized settlement to be made with Baird, it appears that at a regular term of the court held January 6, 1894, in the courthouse at Hartford, there were present John P. Morton, Judge, and the following magistrates: Awtry, Boling, Bennett, Ellis, Myers, Martin, McKinley, Render, Turner, Stevens, and Woodward; and it was—

"Ordered that Judge John P. Morton and Esquire Geo. Martin, be, and they are, appointed commissioners to settle with A. B. Baird the claims held by him against Ohio county. They will ascertain the amount of said claims and execute a note of the county and court therefore, payable at the Beaver Dam Deposit Bank on or before August 1, 1894, out of the first money collected of the county levy for the year 1894. Said commissioners will include in said note all the claims of said Baird and the interest thereon. The sheriff of Ohio county is ordered and directed to pay said note with the first of the 1894 county levy collected by him."

It is not claimed that any report of what was done under the order was ever made to the court, except an oral one to the effect that the Beaver Dam Deposit Bank would not take the note Baird had first received. The only perceivable relation that this report had to the claims, assuming that it was made, was to limit their amount to the face of the first note, not to disclose their character. Hence no question of adoption or ratification by the court can arise. Are the acts of the fiscal court and of its two commissioners as indicated by the present record entitled to the presumptions indulged by the learned trial court? Must it be presumed that claims which had been sanctioned by the court so as to bind the county were surrendered for the note in suit? The answer to these questions must depend upon the statutory power of the fiscal court and the nature of the power attempted to be delegated.

Section 1834, Ky. St. (Ed. 1894, Barb. & Car.) p. 688, enacts:

"Unless otherwise provided by law the corporate powers of the several counties shall be exercised by the fiscal courts thereof respectively."

Section 1837 requires not less than a majority of the members to constitute a quorum for the transaction of business, and provides that no proposition "shall be adopted unless by the concurrence of at least a majority of the court present." Section 1839 confers power on the fiscal courts to levy certain taxes, and section 1840 is as follows:

"The fiscal court shall have jurisdiction to appropriate county funds authorized by law to be appropriated; to erect and keep in repair necessary public buildings, secure a sufficient jail and a comfortable and convenient place for holding court at the county seat; to erect and keep in repair bridges and other structures and superintend the same; to regulate and control the fiscal affairs and property of the county; make provision for the maintenance of the poor, and provide a poor house and farm, and provide for the good condition of the highways in the county, and to execute all of its orders

consistent with the law, and within its jurisdiction, and shall have jurisdiction of all such other matters relating to the levying of taxes as is by any special act now conferred on the county court or court of levy and claims."

Section 1842 provides for records of meetings and for reading and signing them. Section 1843 provides that:

"No minute or order of the fiscal court shall be valid until the same be signed as aforesaid, nor unless the record shows by whom the court was held."

It is plain that these courts are official bodies of special and limited statutory powers and jurisdiction. Our attention has not been called to any statute which purports to authorize such a court to issue promissory notes. It is true that those courts are empowered to refund certain previously authorized debts; for instance, by section 1852 the court may call in certain outstanding county bonds and issue and substitute therefor new bonds of the county; also by section 1857 the court may issue bonds to fund certain county debts contracted in the building, repair, etc., of a courthouse, jail, or other public building, bridges, or turnpikes. But it is to be observed in the first place of all of these enactments that they confer power on the fiscal courts, and in the second place that the powers so conferred are discretionary and seemingly are to be exercised by the courts themselves. Further, the very mode and limitations prescribed for the issue and sale (sections 1855–1857) of these securities negative any idea of express authority in any such court to issue promissory notes like the one in question to holders of claims against the county and in settlement thereof.

The Court of Appeals of Kentucky holds that the fiscal courts shall exercise their powers strictly in accordance with the statutes, and that persons dealing with them must at their peril take notice of the law of their creation. Illustrative of this rule is the decision in Perry County v. Engle, 116 Ky. 594, 598, 76 S. W. 382, 383:

"All persons must take notice that a county can contract only in the manner and by the person and for the purposes expressly provided by the statute."

See, also, Danville, etc., T. R. Co. v. Lincoln Co. Fiscal Court, 77 S. W. 379, 25 Ky. Law Rep. (pt. 2) 1162; Crittenden County Court v. Shanks, 88 Ky. 475, 478, 11 S. W. 468. In Claiborne County v. Brooks, 111 U. S. 400, 406, 4 Sup. Ct. 489, 491, 28 L. Ed. 470, Justice Bradley had occasion to pass upon a doctrine announced in the court below in the trial of that case that "the power of a county to erect a courthouse involves and implies the power to contract for its erection, and the power to contract involves and implies the power to execute notes, bonds and other commercial paper as evidence or security for the contract," and to say:

"We cannot concur in this view. The erection of courthouses, jails, and bridges is amongst the ordinary political or administrative duties of all counties; and from the doctrine of the charge it would necessarily follow that all counties have the incidental power, without any express legislative authority, to issue bonds, notes, and other commercial paper in payment of county debts and charges; and, if they have this power, then such obligations issued by the county authorities and passing into the hands of bona fide holders would preclude the county from showing that they were issued improperly, or without consideration, or for a debt already paid; and it would then be

in the power of such authorities to utter any amount of such paper, and to fasten irretrievable burdens upon the county without any benefit received. Our opinion is that mere political bodies, constituted as counties are, for the purpose of local police and administration, and having the power of levying taxes to defray all public charges created, whether they are or are not formally invested with corporate capacity, have no power or authority to make and utter commercial paper of any kind, unless such power is expressly conferred upon them by law, or clearly implied from such other power expressly given, which cannot be fairly exercised without it."

Notwithstanding this clear expression of the settled law, it might be conceded for the purposes of this case that the fiscal court could itself have issued or provided in the manner stated in its order for the issue of this particular note, in case it were proved that the note was issued as evidence of pre-existing and outstanding debts of the county to that amount, which had been considered and approved by the court. Indeed, it might be assumed that recovery could be had on such acts of the court. But this simply accentuates the necessity for independent proof. It does more; it affects the presumptive or probative weight of the instrument in dispute. It is not the case of a promissory note issued in the exercise of explicit power; but still we should not as at present advised (without regard to the question made touching the form of the instrument) be inclined to hold that a mere substitution of evidence of a just and valid debt should require the formality of a new suit based on the original evidence of the debt.

Furthermore, the nature of the power attempted to be delegated by the order of the fiscal court affords another test of the weight of presumption touching the acts of the commissioners. The power was as before stated to "settle with A. B. Baird the claims held by him against Ohio county," and to "ascertain the amount of said claims," and "include in said note all the claims * * * and the interest thereon." Neither the character of claims nor terms of settlement seem to have concerned the court. It was not stated that the claims held were claims that the court had ever remotely sanctioned. All questions relating to the legal sufficiency of the claims and the reasonable worth of the labor or materials they purported to represent were questions clearly within the scope of the power as delegated. Such latitude of authority would seem plainly to involve the exercise of corporate powers of the county and through an agency not designated by any statute of which we are advised.

It follows that, on the face of the order and in the absence of proof of the origin and nature of the claims, there was a futile attempt made to delegate power involving the exercise of discretion and judgment confided to the court itself. City of Bowling Green v. Gaines, 123 Ky. 562, 566, 96 S. W. 852; Birdsall v. Clark, 73 N. Y. 73, 76, 29 Am. Rep. 105; State, Danforth Bros. v. City of Paterson, 34 N. J. Law, 163, 168; Neill v. Gates, 152 Mo. 585, 594, 54 S. W. 460; Jewell Belting Co. v. Village of Bertha, 91 Minn. 9, 11, 97 N. W. 424; Continental Const. Co. v. City of Altoona, 92 Fed. (3rd Circuit) 822, 35 C. C. A. 27; Blair v. City of Waco, 75 Fed. (5th Circuit) 800, 21 C. C. A. 517; 1 Dill. Mun. Corp. (4th Ed.) § 96; Cooley, Const. Lim. (6th Ed.) p. 248; and in State ex rel. Traders' Nat. Bank v.

Winter, 15 Wash. 407, 409, 412, 46 Pac. 644, may be found an illustration of a distinction to be observed in the present case between an ordinance or order in which the discretion of the ordaining body is exercised and only a ministerial function delegated, and an order like the one under discussion.

We are not convinced that the circumstances attending the delay in commencing the action on the note in suit augment the evidential character of the instrument or of the official acts upon which its execution was based. Especially is this so in view of the testimony of the only surviving officer who signed the note, and of the surviving members of the court who were in office at the date of the order. Nor do we appreciate the legal hardship said to be cast upon plaintiff through the apparent loss of the claims, since appropriate secondary evidence would in that event be admissible. We do not pass upon further assignments of error.

The judgment must be reversed and a new trial awarded, with costs.