## EATON v. SHIAWASSEE COUNTY.

(Circuit Court of Appeals, Sixth Circuit. December 8, 1914.)

No. 2503.

**1. COUNTIES (§ 153*)—BORROWED MONEY—ILLEGALITY—LIABILITY.**

A county may be compelled to return money loaned when the purpose of the loan was lawful and the creation of the debt not prohibited by law, though the procedure was illegal, but is not liable if it never received the benefit of the money, or the loan itself was in excess of the county's authority to create a debt.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 214; Dec. Dig. § 153.*]

**2. COUNTIES (§ 113*)—FISCAL MANAGEMENT—BORROWING MONEY—AUTHORITY —LIABILITY—QUASI CONTRACT.**

Const. Mich. art. 10, § 6, provides that the powers of a county board of supervisors shall be those prescribed by law, and article 10, § 9 authorizes them to borrow or raise by tax a thousand dollars for constructing public buildings, etc., but no greater sum shall be borrowed or raised by tax for such purpose in any one year, unless authorized by a majority of the electors of the county voting thereon. *Held*, that where the voters authorized a board to borrow and issue county bonds for $75,000 to construct a courthouse, but efforts to get the voters to authorize a further loan failed, the board was without power to borrow $30,000 more to be used in the construction of the courthouse without a vote of the electors, and hence the lender could not recover against the county as for money received.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 174–180; Dec. Dig. § 113.*]

**3. COUNTIES (§ 113*)—BOARD OF SUPERVISORS—BORROWING MONEY—CURRENT EXPENSES.**

The board was also without constitutional power to borrow the money for current expenses, and hence the lender could not recover on the theory that the money borrowed was used for that purpose.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 174–180; Dec. Dig. § 113.*]

**4. COURTS (§ 366*)—FEDERAL COURTS—STATE CONSTITUTION—CONSTRUCTION— STATE DECISIONS.**

Where there had never been any settled construction by any court, state or federal, in Michigan of the Michigan Constitution with reference to powers of boards of supervisors to borrow money when plaintiff made certain loans to defendant county, the federal court would follow a decision of the Michigan Supreme Court on the subject, though rendered subsequent to the loan.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by Hugh McCurdy Eaton against the County of Shiawassee. Judgment for defendant, and plaintiff brings error. Affirmed.

In 1903 the county of Shiawassee, Mich., needed a new courthouse, and the voters of the county, at an election duly held, authorized the board of super-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

visors to issue county bonds and borrow $75,000 for that purpose. This was done, the contract let, and the courthouse built; the construction running over a period of two years. By reason of additions and changes authorized by the board, but not by the voters, the total cost was more than $125,000. In 1904 and 1905 the board borrowed from Hugh McCurdy $30,000. Certainly a part, and perhaps all, of this loan was directly or indirectly devoted to meeting the deficiency in the courthouse transaction. Such parts, if any, of the loan as were not so used were employed to pay current county expenses. Efforts to induce the voters to authorize a further bond issue to meet this and other loans having failed, and the county being either unwilling or unable to make payment, Mr. McCurdy's administrator brought this suit against the county. It was not based upon the contract, but was an action for the recovery of plaintiff's money had and received by defendant and used for its benefit. The three $10,000 notes which had been given to Mr. McCurdy were exhibited with the declaration, not as contracts, but as evidence of the amounts received. Upon the trial, a verdict for defendant was directed, and the administrator brings this writ of error.

The Michigan Constitution of 1850, in force until 1909, provided as follows: "Each organized county shall be a body corporate, with such powers and immunities as shall be established by law." Article 10, § 1.

"A board of supervisors, consisting of one from each organized township, shall be established in each county, with such powers as shall be prescribed by law." Article 10, § 6.

"The board of supervisors of any county may borrow or raise by tax $1,000 for constructing or repairing public buildings, highways or bridges; but no greater sum shall be borrowed or raised by tax for such purpose in any one year, unless authorized by a majority of the electors of such county voting thereon." Article 10, § 9.

The Michigan statutes regarding counties and boards of supervisors, after imposing upon the counties the duty of providing suitable courthouses and keeping the same in repair, confer upon boards of supervisors the following powers, among others:

"Sixth. To cause to be erected the necessary buildings for poorhouses, jails, clerks' offices, and other county buildings, and to prescribe the time and manner of erecting the same."

"Seventh. To borrow or raise by tax upon such county any sums of money necessary for any of the purposes mentioned in this act: Provided, that no greater sum than one thousand dollars shall be borrowed or raised by tax in any one year, for the purpose of constructing or repairing public buildings, highways, or bridges, unless authorized by a majority of the electors of such county voting therefor as hereinafter provided." Section 2484, C. L. Mich. 1897.

B. B. Selling, of Detroit, Mich., for plaintiff in error.

B. P. Hicks, of Durand, Mich., and J. H. Collins, of Corunna, Mich., for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and HOLLISTER, District Judge.

DENISON, Circuit Judge. 1. If it is assumed that the entire $30,-000 borrowed is sufficiently traced to an investment in the courthouse building, we meet the question whether it is possible for the lender to recover his money upon the theory of an implied liability or quasi contract or equitable liability, or whatever it may be called, when he cannot recover upon the contract which he actually made, because that contract was forbidden by law. Plaintiff concedes there could be no recovery on the contract. His position is that where a municipal corporation has received plaintiff's money and retains it or its benefits.

and had inherent power to borrow the money from plaintiff, but only failed in some statutory step, the municipality will not be permitted to keep the benefit and refuse to pay the money. This proposition is essentially based on the difference between cases where the borrowing was ultra vires because the corporation was without power, and cases where it was ultra vires because the active agents of the corporation were without power.

[1] In support of a right to recover in this case, plaintiff relies on Supreme Court decisions, of which Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153, is the leading case, and on the decision of this court in Chelsea Bank v. Ironwood, 130 Fed. 410, 412, 66 C. C. A. 230, 232. In the opinion in the latter case, by Judge Richards, the principle of distinction is very clearly put. He says:

"This is a case for the application of the settled rule that a city may be compelled to pay back money which it has received for bonds illegally issued, when the purpose of the loan was lawful, and the creation of the debt not prohibited by law (Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659; Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153; Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238; Chapman v. Douglas County, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378; Read v. City of Plattsmouth, 107 U. S. 568, 2 Sup. Ct. 208, 27 L. Ed. 414; Logan County Bank v. Townsend, 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 107; Aldrich v. Chemical National Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611), and does not come within the exception exempting a city from liability where it has never received the benefit of the money, or the loan itself was in excess of its authority to create a debt (Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537; Hedges v. Dixon County, 150 U. S. 182, 14 Sup. Ct. 71, 37 L. Ed. 1044). This court has applied both the rule and the exception—the former in the cases of City of Gladstone v. Throop, 71 Fed. 341, 18 C. C. A. 61, and Andrews v. Youngstown, 86 Fed. 585, 596, 30 C. C. A. 293, and the latter in the case of Travelers' Ins. Co. v. Johnson City, 99 Fed. 663, 40 C. C. A. 58, 49 L. R. A. 123. In the last case mentioned there is a careful review of the authorities up to that time."

[2] Further study of the very numerous decisions now reviewed in the briefs of counsel suggests no occasion to modify this statement; and it only remains to determine whether the present case is within the rule or within the exception as stated by Judge Richards. We may properly assume, also, for the purposes of this opinion, that plaintiff's suggested distinction is a correct one, and that we may not say that "the loan itself was one in excess of its authority to create a debt," unless the lack of authority pertains to the inherent powers of the municipal corporation itself, as distinguished from the delegated powers of its officers and agents. This distinction will reconcile some of the seeming conflict in the cases; some, it will not; but, unless it exists and is properly here applicable, plaintiff confessedly has no case. Plaintiff says that since the county had the right to make this loan, if authorized by vote, the lack of a vote presents a defect of the second class; the power existed, but a prescribed step in its execution has been omitted. This theory will not reach such a constitutional limitation as that herein involved. The county of Shiawassee is a municipal corporation—a corporate entity. It is erroneous to say that this corporation has the power to make such a loan if only it proceeds in the right

way, viz., by vote of the people. The electors are a body of individuals distinct from the corporation. [1] The county, as an entity, has no power to compel a favorable vote of the people. The obtaining by the corporation of the right to such borrowing rests upon the discretion—even upon the caprice—of another body, the electors. Until that approval has been given, the county is as much without power as if the electors had no right to confer it. This view of the real source of power seems to us clearly to meet the position upon which alone plaintiff's case might otherwise perhaps stand. To accept the contrary view is to say that because a municipality may, on application, be granted additional, but now nonexistent, power, it shall now be deemed to have that power, though it has not applied and though its application, if made, might have been refused. It is clear to us that if plaintiff may recover indirectly, by an action for money had and received, money which the plaintiff has loaned in the face of such a constitutional provision, the substantial force of the prohibition is destroyed. Whether the money has been honestly expended for the real benefit of the county cannot be controlling, as the present case illustrates. The electors decided that the county should have and should become indebted for a $75,000 courthouse only. The board of supervisors thought that the county ought to have and ought to borrow therefor $125,000. If good faith and actual honest expenditures make the criterion, the control which the Constitution reserves to the voters is destroyed. We must conclude that this indebtedness "was in excess of [the county's] authority to create a debt," and that the action, as one for money received and expended on the courthouse, cannot be maintained.

So far as there is herein superficial conflict with the county's moral duty to repay money which it has borrowed and expended for its benefit, that conflict may disappear when we remember that neither the county officers, for the time being, nor the courts have the right to say that it was really for the county's benefit to expend an extra $50,000 on this courthouse. The electors thought it was not, and they may have been right; at any rate, they had the arbitrary discretion to decide.

In the cases relied upon by plaintiff, we find nothing (with one exception) inconsistent with the view that such a constitutional prohibition cannot be thus evaded—as, for example, in Louisiana v. Wood, supra, the result expressly depended upon the existing power of the city to make the loan; the trouble was with the details of the bond issue. "The city could lawfully borrow. The objection goes only to the way it was done." 102 U. S. 298, 26 L. Ed. 153. A review and discussion of these cases in detail seems unnecessary. We find no one of them in which a money recovery was permitted, where borrowing had been affirmatively forbidden by Constitution or statute. The exception is Bank v. Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L. R. A. (N. S.) 84. This seems, in the respect now under consideration, to be parallel to the present case, and the moral obligation was allowed to prevail over the legal prohibition; but we must consider this decision

[1] See Stanly Co. v. Coler, 190 U. S. 437, 446, 23 Sup. Ct. 811, 47 L. Ed. 1126.

as in conflict with Litchfield v. Ballou, in which Mr. Justice Miller stated the controlling principle in these words (114 U. S. at page 193, 5 Sup. Ct. at page 822, 29 L. Ed. 132): "If this prohibition is worth anything it is as effectual against the implied as the express promise." We cannot follow the distinction sought to be made between that implied promise to which these words refer and that duty to repay money received for defendant's benefit upon which the instant action is based.

We hardly need to say that we are not now considering a case of rescission or of liability in analogy to the theory of rescission, where the municipality is shown either to have in its possession plaintiff's money unlawfully received and identifiable in fact or by due presumption or to have the proceeds of that money—traceable and separable. See Litchfield v. Ballou, supra, 114 U. S. 195, 5 Sup. Ct. 820, 29 L. Ed. 132; Lee v. Board of Commissioners of Monroe County (C. C. 6) 114 Fed. 744, 52 C. C. A. 376.

We do not overlook the difference between the right to contract indebtedness and the right to issue negotiable securities, which was pointed out by the Supreme Court in Claiborne Co. v. Brooks, 111 U. S. 400, 406, 4 Sup. Ct. 489, 28 L. Ed. 470, and recognized by this court in Ohio Co. v. Baird, 181 Fed. 49, 53, 104 C. C. A. 63. No such distinction is here involved. The prohibition here is against either borrowing money or raising by tax and as these two are the only possible methods by which an indebtedness which is contracted (beyond the amount of the funds on hand) can ever be discharged, forbidding both of them necessarily forbids the contracting of the debt. If there were any doubt as to the necessity of this implication, it would be removed by the decision of the Michigan Supreme Court hereafter mentioned; but this seems to us the clear result of the language employed. Perhaps it may be said the contracting of the debt is not so wholly forbidden as to make its subsequent voluntary payment unlawful, if the county comes to have funds subject to such use; but we are, at present, concerned with the power to contract a collectible or enforceable debt; and we think, as to that, the prohibition is absolute.

[3] 2. If we adopt plaintiff's alternative theory that the money should be treated as having been borrowed to pay running expenses, then we are met with a decision of the Supreme Court of Michigan in McCurdy v. Shiawassee County, 154 Mich. 550, 118 N. W. 625. This case involved another loan made at about the same period, of money to meet current expenses, and the Supreme Court of Michigan held that the county and the board were wholly without constitutional power to borrow the money, and that the county was not liable either on the theory of implied promise or on the theory of equitable liability for money had and received. Since this decision determines the extent and character of the power of one of the political subdivisions of Michigan, and so is a construction of the Michigan Constitution, it is authoritative in this court. Claiborne Co. v. Brooks, supra. It is true this decision was made after the date of the loans here involved, but that is not controlling. The case is not one where there has been a settled rule in state or federal court regarding the construction of state Constitution or laws, where rights have been acquired in re-

liance on such construction, and where, therefore, the Supreme Court refuses to follow a later state decision inconsistent with that rule. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359.

[4] In the present case, when Mr. McCurdy made these loans, there had never been any settled construction by the federal courts in Michigan or by any court of the Michigan Constitution in this respect. The question was at best one unsettled in Michigan, and one untouched by the federal court. There is an entire absence of that analogy to equitable estoppel, which alone would justify us in declaring that, as against plaintiff's rights, the Michigan Constitution does not mean what the Michigan Supreme Court says it means.

Although there was power to borrow in each year $1,000 for construction and $500 for repairs of courthouses and without any popular vote, no claim based on that power is now presented.

It follows that the judgment below was right; and it is affirmed, with costs.