SAMUEL ADAMS' ASSIGNEE *v.* ALVIN BRANCH, ET AL.

[Kentucky Law Reporter, Vol. 3—178.]

**Conveyance by Insolvent Debtor.**
·One must be just before he is generous, and a conveyance of the greater part of one's estate to his son and son-in-law at a time when the grantor is indebted cannot be upheld as against the claims of creditors.

**Action by Assignee of Insolvent Debtor.**
The assignee of an insolvent debtor may maintain an action to set aside a conveyance of real estate by his assignor made to defraud creditors.

APPEAL FROM NICHOLAS CIRCUIT COURT.

September 9, 1880.

OPINION BY JUDGE PRYOR:

It is not material to inquire what were the motives prompting Samuel Adams to dispose of his land to his son and son-in-law. He was at the time indebted, and the conveyance of more than two-thirds of his entire estate cannot be upheld as against the claims of creditors. One must be just before he is generous, and while a gift to one's children by way of advancement or otherwise may be made, if endangering the claims of existing creditors the chancellor will not hesitate to disregard all such transactions. In this case there was a consideration paid by the son and son-in-law for the land, and we are inclined to conclude from the testimony that they were not apprised of the pecuniary condition of the father, but accepted the bonds in good faith, and at least had no knowledge of any design on the part of the father to defraud his creditors.

The proof conduces also to show that Samuel Adams, at the date of the bonds in 1872, believed that the price to be paid for the land would satisfy his debts; but in this he was mistaken, and so far as this record shows, but little of the money received was applied in that way, and his debts are unpaid. The land sold was worth not less than $50 per acre when these conveyances were made, or when the bonds were executed. It is, then, an admitted fact that his creditors are unpaid and his children have received deeds to the land for which they paid scarcely one-third of its value; and we see no reason why the sale to the son and son-in-law should not be held as constructively fraudulent, although they did purchase in good faith. There may be actual fraud on the part of the grantor and contributive fraud on the part of the grantee.

If the grantees have an equity in this case, and we think they have, they should be required to pay the claims of creditors existing at the time of the sale to them in February, 1872, or the land conveyed to them should be sold for that purpose. They have a superior equity to the extent of the money paid by them, and the land they purchased should only be sold to pay the debts existing at the time. The fact that some of the debts were renewed did not amount to a satisfaction or discharge of the original obligation, unless there had been some change in the security. The son, Millard F. Adams, has sold twenty acres of the land received by him, and the purchase having been made, as we think, in good faith, the purchaser will not be disturbed, but Millard F. Adams must account for its value less the amount paid per acre for it, estimating the whole tract purchased by him at $1,500. If any part of the purchase money due the father remains unpaid, unless the notes are in the hands of innocent parties, the same will be subject to the claims of antecedent creditors.

The conveyance to this land was not made until the year 1874, and no discovery of the fraud was made, or could well have been made, by any of the parties until long after the sale took place.

The relation of son and son-in-law to the grantor, and with but little if any change in the use of the land, presented no reason for inquiry on the part of the creditors, and this is certainly not a case where the chancellor should search for facts to bar a recovery by reason of the lapse of time. That the assignee can maintain this action has been settled by this court in the case of *Boone v. Hall,* 7 Bush 66, and in *Payne v. Able,* 7 Bush 344. What debts were in existence at the time of the bond in February, 1872, and are yet unpaid, does not sufficiently or definitely appear, and the case should go to the commissioner in order that this may be ascertained. When the indebtedness is ascertained the land should be sold, first to satisfy the amount paid by Branch and Adams in their purchase, with interest from day of sale, Adams to account for the land sold by him in the manner already stated, and the balance be applied to the claims of creditors, or the appellees, Branch and Adams, may elect to retain the land and pay the debts.

The claims of creditors subsequent to the sale of the land in February, 1872, should be denied. No question of rents, interest or improvements should be allowed unless the land, by reason of the improvements on the tract purchased by either, has by improvements

placed upon it been enhanced in value beyond $50 per acre.   Nothing
in this opinion is to preclude the appellees from contesting the
validity of any claim that may be presented to the commissioner.
(Cited, *Wood v. Goff's Curator,* 7 Bush 59; *Lowry v. Fisher,* 2
Bush 70.)

Judgment *reversed* and cause remanded for further proceedings
consistent with this opinion.

Judge Hargis not sitting.

*Hargis & Nowell, Reid & Stone, for appellant.*

*Ross & Kennedy, for appellees.*

[Cited, *Stiger v. Jackson,* 139 Ky. 495, 31 Ky. L. 435, 102 S. W. 329.]