## CHELSEA SAV. BANK et al. v. CITY OF IRONWOOD et al.

### (Circuit Court of Appeals, Sixth Circuit. May 21, 1904.)

### No. 1,255.

1. MUNICIPAL CORPORATIONS—ISSUE OF INVALID BONDS—LIABILITY FOR CONSIDERATION RECEIVED.

A city which issued and sold bonds for a lawful purpose, and which were within its charter power, but were held invalid because such power was irregularly exercised, is bound, in equity, to return the consideration received.

2. SAME—RIGHT OF RECOVERY—TRANSFER OF BONDS BY PURCHASER.

Where a city issued bonds which were subsequently adjudged invalid for irregularity in the manner of issuance, and sold the same to a firm which paid a part of the purchase price and resold them to others, the right to recover from the city the consideration received by it passed with the bonds to the holders, to the exclusion of a general receiver appointed for the original purchaser.

3. EQUITY JURISDICTION—GROUNDS.

A city issued and sold bonds which proved invalid, receiving part payment of the purchase price. The purchaser resold some of the bonds, and pledged others, after which a receiver was appointed for its property. In a suit by the city against the purchasing firm to recover the bonds, in which it tendered the amount received therefor, the receiver recovered a judgment for such amount, and instituted a new action in the federal court of the district in which the city was situated to enforce such judgment. Held, that a court of equity had jurisdiction of a suit by holders of the bonds against the city and receiver to enforce, in behalf of themselves and other holders, their equitable right to the amount due from the city, on either of the following grounds: First, that it sought to charge the receiver as a trustee holding the judgment for the benefit of the bondholders; second, that it sought to follow a fund which had been tendered by the city, and in which complainants claimed an equitable interest; third, because it appeared from the pleadings that there might be conflicting interests between the holders and pledgees of the bonds, which could only be adequately adjusted by a court of equity.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

William Alden Smith, Taggart, Denison & Wilson, and John C. Coombs, for appellants.

Belmont Waples, for appellee city of Ironwood.

Before LURTON and RICHARDS, Circuit Judges, and CLARK, District Judge.

RICHARDS, Circuit Judge. This is an appeal from a decree dismissing the bill of the appellants (complainants below). The case arose out of the following facts: On February 24, 1893, an act was passed to reincorporate the city of Ironwood, Mich. (Loc. Acts Mich. 1893, No. 235, p. 36), under which a new council was to be elected April 3, 1893. The act provided that the new city should succeed to the debts and liabilities of the old. The old council, which was continued in office until the new should be elected, by resolution submitted to the electors on April 3, 1893, the question whether the city,

¶ 1. See Municipal Corporations, vol. 36, Cent. Dig. § 1992.

as reincorporated, should issue $150,000 of bonds "for the purpose of paying its floating indebtedness. and making certain public improvements." The act reincorporating the city authorized the issue of bonds for these purposes upon a popular vote. The citizens having voted for the bonds, the new city officers on August 1, 1893, issued, and on October 23, 1893, sold, 150 bonds, of $1,000 each, to Coffin & Stanton, brokers, of New York City, under a contract providing for the payment of $25,000 on the delivery of the bonds, and the balance in installments; the entire purchase price, of $145,275, to be paid by May 15, 1894. Coffin & Stanton paid the $25,000 cash, took the bonds, and, for value received, in the due course of business, and before maturity, assigned and negotiated them to the complainants and others. A question soon arising as to the validity of these bonds, no further installments of the purchase price were paid, nor did the city liquidate any of the coupons. As a result, a suit was brought by the Manhattan Company, as holder, against the city, on certain bonds, in which this court in May, 1896, affirmed the judgment of the court below, holding the bonds were invalid, not because they were issued for an illegal purpose, or in excess of the city's power to incur indebtedness, but because the old city council was not authorized to submit the question of issuing them to the people. Manhattan Co. v. Ironwood, 74 Fed. 535, 20 C. C. A. 642. Coffin & Stanton having failed to pay the balance of the purchase price, on September 19, 1894, the city brought suit in the Supreme Court of the state and county of New York against the firm and others, in which the city tendered $30,000, being the $25,000 paid it, with interest, and sued to recover back the $150,000 of bonds delivered to the firm, alleging their issue was illegal. To this action, Coffin & Stanton, in addition to general denials, specifically denied that at the time of the commencement of the suit they had any bonds whatever remaining in their possession. While this suit was at issue, on July 12, 1896, in an action by Stanton against Coffin, one Thomas P. Wickes was appointed receiver of the firm property. On February 19, 1897, Wickes, intervening, became a party to the suit of the city against Coffin & Stanton, and on April 30, 1897, recovered by default a judgment against the city for $25,000, with interest from October 23, 1893. Prior to the filing of the bill in this case, November 10, 1900, the receiver had brought suit in the court below to recover upon this judgment.

Substantially the foregoing facts were set out in the bill below, in which the complainants, suing on behalf of themselves and the other bondholders, alleged they had succeeded to the right of Coffin & Stanton to recover back from the city the money paid it for the bonds; asserted the receiver had no equitable interest in the judgment recovered, other than that necessary to secure him for his services and expenses in recovering it; and prayed that the city be adjudged indebted to the complainants in the amount of the judgment, or, if the judgment be held invalid, in the sum of $25,000, with interest from October 23, 1893, and for general relief. The answer of the city, while denying the validity of the judgment recovered by the receiver, alleged that, if anything was due in the premises, it was due to

the receiver, and not to the bondholders, while the answer of the receiver insisted upon the validity of the judgment, and the exclusive rights of the receiver therein. The decree of the court below dismissing the bill was made July 8, 1902. Subsequently, on January 6, 1903, affidavits were filed showing that on December 16, 1902, the Supreme Court of the city and county of New York, in the suit brought by the city against Coffin & Stanton, upon the filing of a bond by the city in the sum of $40,000, had set aside the judgment of $30,381.43 in favor of the receiver against the city, and sent the case to a referee for hearing and report. 77 N. Y. Supp. 907.

1. This is a case for the application of the settled rule that a city may be compelled to pay back money which it has received for bonds illegally issued, when the purpose of the loan was lawful, and the creation of the debt not prohibited by law (Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659; Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153; Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238; Chapman v. Douglas County, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378; Read v. City of Plattsmouth, 107 U. S. 568, 2 Sup. Ct. 208, 27 L. Ed. 414; Logan County Bank v. Townsend, 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 107; Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611), and does not come within the exception exempting a city from liability where it has never received the benefit of the money, or the loan itself was in excess of its authority to create a debt (Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537; Hedges v. Dixon County, 150 U. S. 182, 14 Sup. Ct. 71, 37 L. Ed. 1044). This court has applied both the rule and the exception—the former in the cases of City of Gladstone v. Throop, 71 Fed. 341, 18 C. C. A. 61, and Andrews v. Youngstown, 86 Fed. 585, 596, 30 C. C. A. 293, and the latter in the case of Travellers' Ins. Co. v. Johnson City, 99 Fed. 663, 40 C. C. A. 58, 49 L. R. A. 123. In the last case mentioned there is a careful review of the authorities up to that time.

In the present case it is conceded up that the bonds were for a lawful purpose—to raise money "for paying the floating indebtedness of the city and making public improvements." The money was paid to the city, and the city has had the benefit of it ever since. Coffin & Stanton having failed to comply with the terms of purchase, the city on September 19, 1894, recognizing its obligation to account for what had been paid it by mistake, tendered the $25,000, with interest, and brought suit to recover back the bonds. Coffin & Stanton, having negotiated the bonds before that time, were unable to return them.

Subsequently, in the Manhattan Case, the bonds were held illegal, and since that time the real question for decision has been, who is entitled to the money which the city got for its invalid bonds, and which it has offered to return? It is not a case where the city loaned its credit to a railroad, or where it exceeded its charter powers in creating the debt. It had the right to borrow this money for the purposes named. It made a mistake, however, in submitting the question of issuing the bonds to a vote of the people through the old

council. It should have waited for the new council to act. The old council was without power in the premises. The defect was not in a lack of power on the part of the city, but in a failure to exercise the power in a regular way. There was ample power to create the indebtedness, and the city got the full benefit of the money. It ought, therefore, ex æquo et bono, to pay the money back, since the bonds have been held invalid, and the consideration has therefore failed.

2. The city being thus accountable in good conscience for the return of the money paid it by mistake for its invalid obligations, to whom should the money be paid—to the receiver of Coffin & Stanton, for the benefit of their general creditors, or to the present holders of the invalid bonds, to reimburse them, as far as may be, for what they paid Coffin & Stanton for the bonds? Plainly, in our opinion, to the latter. The claim against the city for money due and received is in lieu of the action on the bonds which would exist if they were valid. An assignment of the bonds carries the right to recover from the obligor the money paid him for them, in case the bonds should prove to be invalid. This equitable right to recover the consideration paid for invalid bonds is recognized as existing in the bondholders in the cases we have cited and others. Louisiana v. Wood, supra; Parkersburg v. Brown, supra; Chapman v. Douglas County, supra; Travellers' Ins. Co. v. Johnson City, supra; Hedges v. Dixon County, 150 U. S. 182, 186, 14 Sup. Ct. 71, 37 L. Ed. 1044.

It is worthy of notice in this connection that although in this case the city denies that the bondholders are the equitable owners of the claim against the city, because of its receipt of the $25,000, and asserts that the receiver of Coffin & Stanton is, it contended precisely the opposite in its motion to set aside the judgment taken against it by default in favor of the receiver in the New York suit. In the opinion setting aside the judgment in favor of the receiver, the Supreme Court of New York says:

"Upon this motion the city of Ironwood contends that the right to recover the original $25,000 paid it by Coffin & Stanton rests in the bondholders, and not in the receiver, who holds this judgment, and in support thereof, among others, cites Hoag v. Town of Greenwich, 133 N. Y. 152, 30 N. E. 842, and Gerwig v. Sitterly, 56 N. Y. 214. It is apparent that the contentions of the plaintiff in this motion and in the actions in Michigan against it are wholly inconsistent, nor are the various attitudes of the receiver in entire harmony. * * * The plaintiff's proposed reply herein contains two defenses, neither of which, if sustained, will terminate the three-cornered war waged between the plaintiff, the receiver, representing Coffin & Stanton's general creditors, and the bondholders. Indeed, this reply, taken together with the city's repudiation of its bonds, and its determined efforts to resist the claims of both the receiver and the bondholders, when by an omnibus suit of some kind the entire controversy would be justly disposed of, indicates a desire or attempt on plaintiff's part to hinder those equitably entitled thereto from recovering the $25,000, in which the plaintiff itself, in good conscience, would seem to have no right or interest." 77 N. Y. Supp. 909.

The judgment was set aside upon terms, among which was one that the city should stipulate "to commence some action or proceeding in which the conflicting claims of the bondholders and the receiver may be determined." It is stated in the brief of appellants, and not denied, that, in the new trial thus procured, the city succeeded

in obtaining a judgment in its favor against the receiver upon the express ground that the cause of action belonged to the bondholders, and not to the receiver; the referee saying with respect to certain of the bonds:

"It is manifest, under the authorities, that the right to recover the portion of the amount paid to the plaintiff [city] by Coffin & Stanton, represented by said eighteen bonds, is vested in the owners thereof. The right to recover any portion of the amount so paid passed at the time of the pledge of the bonds to the pledgees thereof, as an incident to such pledge," etc.

3. The remaining question of importance is whether the complainants have a remedy at law so adequate and complete that a court of equity will decline to entertain their suit. As was said in Kilbourn v. Sunderland, 130 U. S. 505, 514, 9 Sup. Ct. 594, 596, 32 L. Ed. 1005:

"The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances."

This must be determined by the case presented in the pleadings. For, jurisdiction in equity having once attached, the court will retain the case for the purpose of rendering, under the general prayer, such relief as may be required by the changed circumstances, although it be legal in its nature. Waite v. O'Neil, 76 Fed. 408, 22 C. C. A. 248, 34 L. R. A. 550. When this suit was instituted, the receiver had a judgment against the city, which he was trying to enforce. The complainants alleged they were the equitable owners of this judgment; that the only interest the receiver had in it was one to secure him for services and expenses in recovering it—in other words, that he held the judgment virtually as trustee for them; and they asked the court to collect it, and, after discharging his claim, distribute the balance of the amount among them. This in itself afforded ground for equitable jurisdiction.

But laying aside the consideration of the judgment, the bill averred that the city had received $25,000 for bonds which proved to be invalid; that it had tendered this amount, with interest, to the original purchaser; and it is a fair inference from the averments of the pleadings that when this suit was instituted the city still held that amount, prepared to pay it over either to the receiver or to the bondholders, as the court might determine between them. In other words, the bondholders were seeking to follow a fund in which they claimed an equitable interest. This, too, furnished ground for equitable cognizance.

Again, there were 150 bonds, of $1,000 each, delivered to Coffin & Stanton. Some of these the firm sold, and others it pledged. The terms of sale or hypothecation, the interest transferred, and that retained, are not shown in the record. It does not, therefore, appear that each holder of a $1,000 bond, no matter how obtained, would be entitled to a 150th part of $25,000, with interest. The extent of the claim of each complainant, and his share of the amount to be distributed, must therefore be ascertained. These relative rights can be properly determined only by a court of equity. In this connection, it is to be observed that, a limited amount only being available for distribution, the interests of the bondholders may conflict among

themselves. Each bondholder may desire to be heard not only with regard to his own claim, but in respect of the claims of others whom he may consider not entitled to participate in the fund. Bailey v. Tillinghast, 99 Fed. 801, 40 C. C. A. 93.

In Ætna Ins. Co. v. Lyon County (C. C.) 44 Fed. 329, Judge Shiras said (page 345):

"It seems to me that the only means of solving the difficulties of the situation is for the plaintiff and the other nonresident bondholders to unite in a proper proceeding in equity against the county and such other bondholders as may refuse to act as complainants, and in such suit it can finally be determined for what amount the county can be held liable, and the rights of the respective bondholders in and to this sum can be decreed."

Since the case goes back, it may be well for us to add that we are clear in the opinion there is no set-off against the complainants stated in the answer of the city or presented by the proof. If the items relied on constitute a claim against any one, it is against the receiver; but with respect to that, of course, we are not to be taken as even intimating any opinion.

Having reached the conclusion that the only way to solve the difficulties of the situation presented is through the medium of a court of equity, the judgment of the court below dismissing the bill is reversed, and the case remanded for further proceedings not inconsistent with this opinion.