E. ADELAIDE BASS *vs.* INHABITANTS OF WELLESLEY.
SAME *vs.* SAME.

Norfolk.    January 11, 1906. — September 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Evidence,* Presumptions and burden of proof.    *Bills and Notes.    Payment.    Mistake.    Municipal Corporations.*

In an action against a town on promissory notes purporting to be signed in approval by the selectmen of the defendant, which were negotiated fraudulently by a defaulting treasurer of the town who then was in good standing and which came into the hands of the plaintiff as a *bona fide* purchaser, where the defence is that the signatures of the selectmen were forged by the treasurer, the burden is on the plaintiff to show by a fair preponderance of the evidence, with all reasonable inferences to be drawn from it, that the notes sued upon are genuine, but he is not bound to exclude the possibility that they were forged.

In an action against a town on two promissory notes purporting to be signed in approval by the selectmen of the defendant, which were negotiated fraudulently by a defaulting treasurer of the town who then was in good standing and which came into the hands of the plaintiff as a *bona fide* purchaser, where the defence was that the signatures of the selectmen were forged by the treasurer, it appeared that meetings of the selectmen were held regularly on a certain evening of every week and that notes usually were signed at such meetings, that notes usually were signed two or three days before their dates, that the notes sued upon bore date four days after a meeting at which two notes for the same amounts as the notes sued upon had been signed by the selectmen, that the notes sued upon were sold by the treasurer on the day before the next meeting of the selectmen, that these notes did not appear in the list of genuine notes of the town nor in the treasurer's accounts and were not to be found, the plaintiff having parted with them in exchange for a renewal note forged by the treasurer. There was nothing to show that at the meeting last preceding the date of

the notes the selectmen signed more than two notes or that more than two notes were signed by them between that meeting and the next one. *Held,* that there was evidence warranting a finding that the two notes signed by the selectmen at the meeting four days before the date of the notes sued upon were the two notes purchased by the plaintiff.

The surrender of a genuine note of a town in exchange for an instrument purporting to be a renewal note forged by the treasurer of the town does not extinguish the surrendered note, which, although not to be found, still can be sued upon by the holder thus induced to give it up.

If the holder of a genuine note of a town surrenders it in exchange for an instrument purporting to be a renewal note which has been forged by the treasurer of the town by raising it from $5,000 to $15,000, and the holder is acting under a mistake in supposing that the treasurer has authority to renew the note as well as in believing the renewal note to be genuine, his mistake of law as to the authority of the treasurer does not prevent him, when suing later on the surrendered note, from showing that the instrument accepted in renewal was a forgery and therefore that the note surrendered by him was not extinguished.

MORTON, J. These two actions were tried and argued together. The only evidence offered was the auditor's report which it was agreed should be accepted in both cases as a finding upon the facts. It also was agreed that the only questions of law to be determined were the questions arising upon the auditor's report and the pleadings. The judge found for the plaintiff in the first action, and for the defendant in the second, and reported the cases upon the question whether the evidence contained in the auditor's report was sufficient in law to warrant his findings.

The first action is upon three notes alleged to have been authorized by a vote of the town, signed in the name of the town by one Jennings, its treasurer, and approved by its three selectmen, two of the notes being alleged to have been lost and the other alleged to be in the possession of the defendant. If the plaintiff prevails in the first action she does not seek to recover in the second.

We are of opinion that there was evidence sufficient to warrant a finding for the plaintiff in the first action. That case turns upon the question whether there was sufficient evidence to warrant a finding that the two notes,* which, it is found, were

---

* The first of the notes sued upon was as follows :

"State of Massachusetts.

" $5,000.00                         Wellesley, December 23, 1899.

" One year after date, for value received, the Town of Wellesley, by its Treasurer, acting under authority of a vote of the Town, passed March 6,

signed by the selectmen at the meeting of December 19, were the two notes that subsequently were sold by Jennings to Estabrook and Company, and by them were sold to the plaintiff. There are other questions but this seems to us to be the principal one. It is conceded that the third note was a genuine note, and the defence to that rests on other grounds than forgery. The two notes referred to bear date December 23, 1899. They did not appear upon the books kept by Jennings as town treasurer, there was no entry on those books charging him with the proceeds, and they were not mentioned in his report to the town. They were surrendered to Jennings under circumstances hereinafter stated. At the time when they were issued he was a defaulter to the extent of $25,000. On December 27 he sold to R. L. Day and Company two notes also of $5,000 each and bearing date December 27. These notes appear in his accounts and are admittedly genuine. The two notes bearing date December 23 were sold by him to Estabrook and Company on December 26 for $9,552.50, being the face of the notes less the discount. Estabrook and Company paid for the notes by a check payable to the order of the town of Wellesley which was indorsed by Jennings as treasurer, and on the same day de-

---

1899, promises to pay to the order of its Treasurer the sum of Five Thousand Dollars, in Boston, at the Boston Safe Deposit and Trust Company. This note is given in anticipation of taxes of the present municipal year, and is payable therefrom.

" The Town of Wellesley,
    " By Albert Jennings, its Treasurer.

" Approved, and we certify that this note is issued under authority of the above described vote, that it conforms to the requirements thereof, and that the total sum borrowed to date, including this note, is $50,000.

" Fred O. Johnson,

[SEAL]            Richard Cunningham,

                   Oliver C. Livermore,

[Indorsed]           Selectmen of the Town of Wellesley."

    " The Town of Wellesley,
       " By Albert Jennings, its Treasurer."

Here followed a certificate of the town clerk to a copy of a vote of the town authorizing the treasurer with the approval of the selectmen to borrow temporarily in anticipation of taxes the sum of $80,000.

The second note was exactly similar to the first in all respects except that in the certificate of the selectmen the total sum borrowed to date was stated to be $55,000 instead of $50,000.

posited by him to the credit of the town in the Boston Safe Deposit and Trust Company. It does not appear whether the notes which the selectmen signed on December 19 were then dated, or, if they were, what the date was, and the defendant contends that the circumstances are, to say the least, as consistent with the contention that they were the notes which were dated December 27 and sold to R. L. Day and Company on that day, as with the contention that they were the notes dated December 23 and sold to Estabrook and Company. If the former was the case then it would seem to follow that the two notes dated December 23 and sold to the plaintiff were forgeries.

The selectmen kept no complete record of the notes which they signed or of the total amount which the town had borrowed. Meetings were held regularly every Tuesday evening and notes were usually signed at such meetings; but they also frequently were signed by them at their houses or places of business. Notes were usually signed two or three days before their date. The selectmen had a regular meeting on Tuesday evening December 19 and one also on Tuesday evening December 26. It is found, as already observed, that two notes for $5,000 each were signed by the selectmen at the meeting which was held Tuesday evening December 19, and it would plainly be more in accord with the usual course of business that these notes should have been dated December 23, than that they should have been dated December 27, which would carry them by another meeting of the selectmen. In view of the fact that there would be a regular meeting on the evening of December 26 it can hardly be supposed that the notes signed on the 19th would be dated as of the 27th. And if the date was written in at the time when the notes were signed by the selectmen on the 19th the probabilities are more in favor of its being the 23d than the 27th. Or if, as quite likely, no date was written in, it is more probable that Jennings procured the selectmen to sign them with the expectation on their part and his that they would be negotiated before the next meeting and that pursuant to such expectation he dated them December 23 but delayed or was prevented from disposing of them till the 26th, than that he dated and disposed of them on the 27th. Moreover Jennings was a defaulter, and it is not unreasonable to suppose that he

would seek to cover up his defalcation by procuring the select-men to sign notes, which, according to the usual course of business, he could easily do, and disposing of the notes thus signed and depositing the proceeds to the credit of the town omitting all reference to them in his accounts. The fact that the notes are not to be found and that they do not appear in the list of genuine notes nor in his accounts is not necessarily inconsistent with their genuineness. To have entered them of record would have made his detection more certain if and when his accounts were examined. There is nothing to show that the selectmen signed more than two notes on the 19th, or that more than two notes were signed by them between that and the 27th, and it would seem highly improbable, that, with two genuine notes of $5,000 each in his possession undisposed of, Jennings would forge two others of the same amounts and date them the 23d. The plaintiff is not bound to exclude the possibility that the two notes which the selectmen signed on the 19th were those that were dated and sold on the 27th but only to show by a fair preponderance of the evidence, with all reasonable inferences therefrom, that they were the notes declared on. *Woodall* v. *Boston Elevated Railway*, *ante*, 308. And we are of opinion that she has done so; or, at least, that it cannot be said that there was not evidence warranting such finding.

The three notes which are the subject of the first action fell due in December, 1900. They were not paid in cash at maturity, but were surrendered to Jennings for what purported to be a note of the town for $15,000. This note is found by the auditor to have been raised from five to fifteen thousand dollars. When this note fell due it was also surrendered to Jennings who gave what purported to be a new note by the town for the same amount. The auditor found that both of these notes were forgeries; but, even if they were not, he ruled that the treasurer would have had no right under the votes of the town to issue them in renewal of other notes. *Abbott* v. *North Andover*, 145 Mass. 484. It is clear that payment by a forged note is no ♙payment. *Central National Bank* v. *Copp*, 184 Mass. 328. *National Granite Bank* v. *Tyndale*, 176 Mass. 547. *Walker* v. *Mayo*, 143 Mass. 42. *Grimes* v. *Kimball*, 3 Allen, 518. *Atkin-son* v. *Minot*, 75 Maine, 189. The defendant contends that the

plaintiff must be held, as matter of law, to have taken the renewal notes with knowledge of the treasurer's want of authority to issue them, and that therefore her surrender of the old notes and acceptance of the new operated to extinguish the former. That would give to a presumption of law greater effect than would be given to the actual fact. If the plaintiff had had actual knowledge of the treasurer's want of authority, she would not have surrendered the old notes at all, except upon payment or the receipt of others equally good. The most that can be fairly said is that she was mistaken as matter of law in thinking or assuming that the treasurer could give notes in renewal, and that that fact operated with his implied representation that the renewed notes were valid, to induce her to surrender the old notes and accept the renewed notes in place thereof. A surrender of the old notes under such circumstances would not operate to extinguish them, or to prevent the plaintiff from showing that the notes accepted in renewal were forgeries.

The result is that in each case the judgment is to be affirmed.

*So ordered.*

*R. M. Morse,* (*L. Bass, Jr.* with him,) for the plaintiff.
*A. E. Pillsbury & E. K. Arnold,* for the defendant.