13254

SOUTH CAROLINA NATIONAL BANK OF CHARLESTON v. UNION COUNTY

(160 S. E., 733)

*Messrs. Haynsworth & Haynsworth* and *Barron, Barron & Barron,* for appellant,

*Mr. John K. Hamblin,* for respondent,

October 13, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action on two promissory notes of $10,000.00 each, executed by, and made payable to the order of, J. V. Askew, supervisor of Union County. The following is an exact copy of each of the notes, they being identical in form and terms:

"$10,000.00                    Union, S. C., December 15, 1927

"On June 15, 1928, after date, the County of Union, State of South Carolina, promises to pay to the order of J. V. Askew, Supervisor of said county, the sum of Ten Thousand & No/100 ($10,000.00) Dollars at the Hanover National Bank of New York City, N. Y., for value re-

ceived, with interest from date at the rate of 5% per annum until paid, together with all costs of collection, including ten per cent, attorney's fee.

"This money is borrowed to pay the current obligations for the fiscal year beginning 1927 under authority contained in section 1101, Civil Code 1912. To secure the payment of said sum, the taxes of said County to be collected and applicable to claims for the payment of which this money is borrowed, as aforesaid, for the fiscal year, are hereby pledged to the payee hereof or order.

Witness the hand and official seal of the County Supervisor of said county, State of South Carolina.

"[Signed] J. V. Askew,

["Seal]. · "Supervisor of Union County, S. C.

"I hereby certify that all acts, matters and things required to be done to make the above note of the County of Union, State of South Carolina, Ten Thousand & No/100 ($10,000.00) Dollars, dated December 15, 1927 and due June 15, 1928, issued by the County Supervisor of Union County, State of South Carolina a legal and binding obligation of the County of Union, State of South Carolina have been done and fully performed, and that this note is within the legal debt limit of the County of Union, State of South Carolina, and that the above loan was authorized by the county delegation on December 12, 1927.

"[Signed] J. V. Askew,<br>"Supervisor of Union County, S. C.<br>"[Signed] John K. Hamblin,

"[Seal]. "Attorney for Union County, S. C.

"I hereby certify that all of the above signatures are genuine and that this note is within the legal debt limit of the County of Union, State of South Carolina.

"[Signed] J. W. Wilbanks, Cashier.

"[Bank Seal]."

Some of the undisputed facts out of which this action arose are these: On December 15, 1926, the County of

Union entered into a reimbursement agreement with the State Highway Commission, whereby it contracted to make a loan to the commission of $20,000.00, to be used in hardsurfacing a highway of that county; in order to provide the necessary funds, the Senator and county legislative delegation authorized that sum to be borrowed; after due advertisement, the bid of the Citizens' Bank & Trust Company of Union was accepted, and two notes were issued, each in the sum of $10,000.00, of date December 15, 1926, due December 15, 1927. When the notes became due, the county had no funds on hand to make payment, and, at the request of the bank, the Supervisor executed two other notes, those here sued on, and indorsed and delivered them to the bank as a renewal of the two original notes. About four or five days after the renewal notes were turned over to the bank, its president, one R. P. Morgan, requested the Supervisor to give the bank another note for $20,000.00, stating that he could handle such a note better than the two $10,000.00 notes. This the Supervisor did, giving this note also as a renewal of the two original notes. There were then outstanding the two original notes of $10,000.00 each, the two renewal notes of $10,000.00 each, and the $20,000.00 renewal note. A few days later, the president of the bank sold the two $10,000.00 renewal notes to the plaintiff for value, depositing $20,000.00, it was claimed by the bank, to the credit of the Supervisor as a special account, although the Supervisor knew nothing of the deposit until after the bank failed; when these two notes became due, the defendant refused to pay them, and the plaintiff then brought this action. (In justice to Mr. Hamblin, it should be said that the testimony is undisputed that he did not sign the certificate attached to the note, but that his name was written by his stenographer without authority or direction).

The complaint is in the usual form, it being alleged that the plaintiff relied, in its purchase of the notes, upon the representations contained in them and the certificates consti-

tuting a part thereof; that it paid into the hands of the Citizens' Bank, which was an agent or depository of the defendant, full value for the notes, and that the county got the full benefit of the proceeds thereof.

The defendant answered by a general denial, and also pleaded, as a special defense, that the notes were not executed as rquired by law, in that they were not countersigned by the treasurer of the county, and no notice was given by the county advisory board, and that the defendant never received any consideration for them.

At the conclusion of the testimony, plaintiff and defendtna each asked for a directed verdict. Judge Johnson, presiding, granted the defendant's motion, giving the following reasons: "That the instruments sued upon were never, in fact, authorized, signed, or delivered by the borrowing power of Union County, the county advisory board; and that, while such a certificate as that signed by the Supervisor in this case (if it had been signed by him as secretary of such advisory board, and not merely as Supervisor) might estop the county from availing itself of any irregularities in such execution and issuance—such as a failure to advertise for ten days, etc.—it would not estop the county from showing that the only officials having power to borrow money had not in fact executed these obligations, and that, therefore, they were not binding obligations."

From this order, the plaintiff appeals.

The first question presented for our consideration is: Did the Circuit Judge commit error in holding that the notes involved in the litigation were not valid, binding obligations of Union County, for the reason that they had not been legally executed?

The trial Judge states in his order that, while he admitted considerable testimony over objections which should have been sustained, he took all objections under advisement, and, in disposing of the motions made, considered only such evidence as was "relevant to the issues raised." We assume

that he considered the "issues raised" to be the issues made by the pleadings; and that as it appeared from the complaint, as well as from the notes themselves, that they were issued "to pay the current obligations of the fiscal year beginning 1927," only such testimony as was relevant to establish, under the law, the validity of notes issued for that purpose was considered by him in reaching his conclusion. He thus states his view of the governing, applicable law:

"Prior to the approval of Act No. 94, of the Acts of 1923 (33 Stat., 136), the 'County Supervisor' of Union County was clothed with the authority to borrow money for the county upon obligations signed by him and countersigned by the County Treasurer—sections 1943 and 1947, Code of 1922.

"By the act of 1923, however, the power to borrow money was transferred to the county advisory board, composed of the County Supervisor and four (4) other members, of which board the Supervisor was made secretary by the provisions of such Act, which also provided for a chairman of the board to be named from, and by, the other four (4) members thereof.

"This transfer of the power to borrow money is to be found in section 4 of the Act of 1923 (33 Stat., 137), where it is provided: 'All other things and matters not hereinbefore set forth that have been administered by the County Supervisor or County Advisory Board or Highway Committee, shall be administered by said County Advisory Board,' etc.

"Later, by Acts No. 99 and 140 of the Acts of 1927 (which appear to be duplicate Acts), it was provided, by section 16 thereof, how the County Advisory Board should proceed when it sought to exercise its authority to borrow money, and such Board was specifically given the authority to reject any and all bids for loans, etc.

"The obligations in question did not purport to be executed by the County Supervisor as Secretary of the County

Advisory Board (they were executed by him as Supervisor of Union County), and there is no evidence before the Court that the County Advisory Board knew anything of, or had anything to do, with the preparation or issuance of the instruments sued upon; and yet, under the acts of 1923 and 1927, such County Advisory Board alone was authorized to borrow money. It would seem, therefore, that the Supervisor (as Supervisor, and not as Secretary of the Advisory Board) had no power, in law, or in fact, to execute and deliver these notes, and that they are not obligations of Union County."

The contention of the appellant is that by section 1943 of the Civil Code of 1922, the county supervisor is authorized to sign all notes for borrowing money for Union County, and that by section 1947 he is given power to borrow money for the use of the County; that while the act of 1923 vested the county advisory board with the authority and power to administer matters formerly administered by the county supervisor, the supervisor was made a member of such board, and is continued a member by the act of 1927; that the act of 1927 does not contemplate that notes for borrowing money should be countersigned by the county treasurer, and therefore it is no longer necessary for the notes to be countersigned by such officer; that where such notes are signed by the county supervisor, they should be regarded as executed in full compliance with the provisions of the statute; that if the regularity of the notes here sued upon is tested by the regulations applicable to ordinary county notes, their execution by the supervisor was a substantial compliance with the law; and that the notes are valid if regarded as having been made to meet the current expenses of the county.

We think, however, from an examination of the statutes referred to, that the position taken by the appellant cannot be sustained. It is clear that notes issued by the county, to be legal, binding obligations, must

be authorized by the county advisory board and counter-signed by the county treasurer. Section 1943 of the Code provides that the supervisor shall be "given the power to sign all notes for borrowed money for Union County, when the loan is authorized by the advisory board of the county and countersigned by the county treasurer." Section 1947 provides that "the county supervisor shall have power to borrow money for use of the county and the supervisor, by signing and the county treasurer by countersigning, shall execute the loan by virtue of a resolution of the Legislative Delegation, and no loan shall be made except in pursuance of such a resolution that no money shall be borrowed by the supervisor without first giving ten (10) days' notice in one of the local newspapers at Union, S. C., of the time and place when bids shall be considered." The act of 1923, as pointed out by the Circuit Judge, transfers all power to borrow money, theretofore vested in the county super-visor, to the county advisory board; but this did not change the law requiring that the notes or other obligations should be countersigned by the county treasurer; and while the act of 1927 does not specifically state that the notes or other obligations shall be countersigned by the county treasurer, that requirement of the existent law was not repealed by that act, and therefore remains in force and effect.

The notes involved in the case at bar were executed by the supervisor merely as supervisor, were not authorized by the county advisory board, and were not countersigned by the treasurer. Consequently, regarded as obligations to meet current expenses of the county, they were not executed according to law.

The appellant contends, however, that even if the supervisor was without authority to execute the notes, the county is bound by the recitals contained therein, particularly the supervisor's certificate to the effect that all acts and things required to be done to make the notes valid obligations of the county had been done, and

cites numerous cases in support of this position. With regard to this contention the trial Court said: "Does the fact that he was secretary of the board, accompanied by his certificate to the effect that all necessary things had been done, estop the defendant county from raising the question that the alleged obligations were not executed by those having authority so to do—in view of the fact, as hereinbefore stated, that he did not sign them 'As secretary' but as county supervisor? I think not; and am of the opinion that the authorities cited on behalf of plaintiff apply to instances where the obligations sued upon were, in fact, issued by those clothed with authority to execute them, and that, where such obligations are, in fact, signed and issued by those having power to execute them, a certificate of the clerk or secretary of such board of the general tenor of that of the supervisor in this case would estop the political subdivision in question from contending that such things as advertising, or giving notice, etc., had not been done. In other words, where the instruments sued upon had been in fact, executed by the proper officials, a certificate of the clerk or secretary to the effect that all necessary things had been done would prevent the defendant from showing that there were certain irregularities in the execution and delivery of the obligations in question."

We think the position taken by Judge Johnson is correct. We find from an examination of the authorities cited by the appellant that the obligations there in question were issued by those clothed with authority and power to execute them, and it was held that, under those circumstances, the political subdivisions in question would be estopped, because of the recitals therein, from showing that there were any irregularities in their execution or delivery. In the case at bar, as the County Supervisor had no authority to execute the notes, the county would not be estopped by any recitals therein from showing that they were not valid obligations because not executed by legally authorized officials.

Appellant takes the further position that the notes sued upon represent a valid indebtedness under the reimbursement agreement with the Highway Commission; that the Act of 1926 (34 Stat., 1001), leaves to the Senator and the county delegation the matters of selecting the form of obligations and of naming the officer or officers to execute them; and that, the senator and the delegation having performed these functions with respect to the original notes, the county cannot now question the validity of the renewal notes, executed by the same officer and containing the same terms.

It is clear from the recitals contained in the notes sued on, and from the allegations of the complaint, that the plaintiff, in the purchase of the notes, relied upon the recitals that they had been executed and issued for the purpose of raising funds to meet the current expenses of the county. This being true, it is evident that, although the trial Judge admitted over objection testimony tending to show that these notes were in fact issued to renew notes that had been executed for the purpose of raising funds under the reimbursement agreement with the Highway Commission, he did not consider this phase of the question in passing on the motions for directed verdicts, as he evidently did not deem the admission of such testimony "relevant to the issues raised." However, it does not appear that the plaintiff is in any better plight, even if it should be given the benefit of the facts disclosed by this testimony. Section 2 of the 1926 Act (34 Stat., 1001) provides that the bonds "shall be issued in such form and denomination, as the Senator and at least one-half of the Members of the delegation from such county in the General Assembly may direct in writing. The said bonds shall be signed by such officers as shall be designated as aforesaid by the Senator and at least one-half of the Members of such delegation, and the seal of such county or the seal of the Supervisor of such county shall be affixed to or impressed upon said bonds. The delivery of the bonds shall be valid

notwithstanding any changes in officers or seal occurring after the execution of the bonds."

It is seen from these provisions of the law, that the ██ authority vested by the Act in the Senator and Members of the legislative delegation is merely to prescribe the "form and denomination" of the bonds to be issued, and to designate the officers who should sign them; not to "authorize" the issuance of bonds. With regard to that important matter, the Act provides that "the officer or body in any county in this State having authority to enter into agreements on behalf of said county pursuant to Section 6 of the Act commonly known as the 'Pay-As-You-Go Act' [33 Stat., 1193] * * * is hereby authorized to issue negotiable bonds of such county from time to time, upon the conditions hereinafter stated, for the purpose of raising moneys to pay the cost of constructing any highway or highways in said county embraced in the State Highway System. * * *" Section 1. As we have already pointed out, this body in Union County was the county advisory board, of which the County Supervisor was a member; and even if it be conceded that this board authorized, in the first instance, the borrowing of $20,000.00 for the purposes named in the Act, and that the Senator and county delegation directed that the notes be issued "in the form and denomination" in which they were issued and designated the County Supervisor to sign them, there is not the slightest evidence that the notes herein sued upon were ever authoried by the county advisory board, or that the Senator and members of the legislative delegation knew anything about them. The designation of the Supervisor to sign the original notes did not carry with it the power to renew such notes, his authority being limited to that expressly conferred. It follows, therefore, that these notes, considered as renewal highway notes, were executed by the Supervisor without authority, and are not valid and binding obligations of the county.

From what we have said, it is clear that, if the Supervisor did not have authority to execute the notes, the county was not estopped by the recitals in the notes, that the loan was authorized by the county delegation on December 12, 1927, it being undisputed that no such authorization was given, even if the delegation, under the law, could have given it.

The appellant's exception, that the Court erred in not holding that "the loss involved in this case should fall upon the county rather than upon the plaintiff upon the principle that where one of two innocent parties must suffer, it should fall upon him who was instrumental in causing the loss," is without merit. If the notes in question had been executed and issued by legally authorized officials of the county, the principle invoked would be applicable. But, as we have held, they were executed by an unauthorized person, the County Supervisor, and it cannot therefore, be urged that the loss thereby made possible was caused by the acts of the defendant.

It is further contended that the county received the "benefit from the negotiation of said notes" and that therefore it should be required to pay them. Under the facts disclosed by the testimony, we do not think that the county, as a matter of fact, received the benefit as claimed. It is true that the cashier of the Citizens' Bank testified that, at the time of the sale of the two notes to the plaintiff, there was placed to the credit of the Supervisor, as a special account, the sum of $20,000.00, but the bank was then headed for the rocks, and no official of the county was notified or knew anything about such an account, not even the Supervisor himself, until after the bank failed Furthermore, if the county was to have the benefit of the deposit, the Supervisor was not the proper person to whose credit the account should have been placed He had no authority to carry such an account or to check on it as the county's representative; these duties devolving under the law upon the County Treasurer. Under this state of facts, it can hardly be con-

tended that, either in law or in fact, the county actually "received the benefit from the negotiations of said notes."

It is a matter of regret, of course, that the plaintiff must lose its money; but it was charged with knowledge of the law, and, by the exercise of due care, could have saved itself from all harm. A misplaced trust brought about its damage; but, under the law, the county cannot be made to suffer on that account

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.

MR. JUSTICE COTHRAN (dissenting) : This is an action upon two negotiable promissory notes, executed by J. V. Askew as Supervisor of Union County, dated December 15, 1927, due June 15, 1928, payable, to himself or order, officially, and indorsed and delivered by him to Citizens' Bank & Trust Company of Union, S. C.; each note was for $10,000-.00 with interest from date at the rate of 5 per cent. per annum. Both notes were transferred by the Union bank to the South Carolina National Bank, for full face value, on December 23, 1927. A copy of one of the notes (the other being identical with it), is set forth in the opinion of Mr. Justice Stabler, with the memoranda attached.

The complaint contains two causes of action, separately stated; the one upon the notes with interest, subject to a credit of $2,000.00 paid by the receiver of the Union bank on August 1, 1928, and the other practically a count for money had and received (the proceeds of the sale of the notes sued upon), by the county, for the use and benefit of the holder thereof.

The defendant answered denying its liability upon the notes as having been executed and delivered by the Supervisor without warrant of law, as will later be explained.

The case was tried before his Honor, Judge Johnson, and a jury; at the close of all of the testimony he directed a ver-

dict in favor of the defendant upon the grounds stated in his order. From the judgment entered thereon, the plaintiff has appealed.

The facts of the case are as follows:

On December 15, 1926, the County of Union entered into a reimbursement agreement with the State Highway Commission, whereby it contracted to make a loan to the commission of $20,000.00, to be used in hard-surfacing a highway in the county, as authorized by what is known as the "Pay-As-You-Go Act" (33 Stat., 1193); in order to provide the necessary funds, the Senator and county legislative delegation authorized that sum to be borrowed; after due advertisement the bid of the Union bank was accepted; thereupon there were executed by or on behalf of the county two notes, each in the sum of $10,000.00, dated December 15, 1926, and due December 15, 1927, with interest from date at the rate of 5 per cent. per annum; these notes were delivered to the bank and the proceeds were used in complying with the reimbursement agreement with the State Highway Commission; the proposed highway was constructed; it appears that the State Highway Commission complied with its agreement to reimburse the county for the advance.

When these original notes (as I shall refer to them) became due on December 15, 1927, the county had no funds on hand to pay them; application was made to the bank for a renewal of the notes, which was agreed to by the bank; the Supervisor then executed two other notes (those described in the complaint, each for $10,000.00, dated December 15, 1927 and due June 15, 1928), and indorsed and delivered them to the bank as renewals of the two original notes.

On December 23, 1927, the president of the Union bank transferred them to the plaintiff bank; he received the proceeds thereof, $20,000.00, and the interest for 8 days, $22.00, $20,000.00 of which he deposited, on December 24th, to the credit of the Supervisor, as a special account; (there was evidence tending to show that the Supervisor knew nothing

of this deposit until after the failure of the bank, which occurred on January 18, 1928).

The Supervisor testified that a few days before the maturity of the original notes, December 15, 1927, the president of the bank came to him and asked him what he wanted to do about the notes; that he told him that he wanted to renew them, to which the president agreed; that the president went away and later returned with the two $10,000.00 renewal notes which he, the Supervisor, signed; that about ten days "from that," which was evidently after he had sold the notes to the plaintiff bank, the president returned and requested the Supervisor to give the bank a note for $20,000.00, in lieu of the two renewal notes, stating that he could not handle the two $10,000.00 notes, but could handle a note for $20,-000.00; this the Supervisor acceded to, and signed the $20,-000.00 note upon the president's promise to return the two $10,000.00 notes previously signed, intending that the $20,-000.00 note should constitute a renewal of the two original notes; the two renewal notes, of $10,000.00 each, and the $20,000.00 note were all dated December 15, 1927, and due June 15, 1928. The president's promise to return the renewal notes was not fulfilled, for the apparent reason that they had then been transferred and delivered to the plaintiff bank.

When the two renewal notes of $10,000.00 each, which had been assigned to the plaintiff bank, fell due on June 15, 1928, the plaintiff's demand for payment was refused, and the present action was commenced.

The defendant answered by a general denial, and also pleaded, as a special defense, that the notes were not executed as required by law, in that they were not countersigned by the Treasurer of the county, and no notice was given to the county advisory board; that the defendant never received any consideration for them. His Honor, Judge Johnson, granted the motion for a directed verdict upon this position of the defendant.

It is proposed to decide this case solely upon the issue of the validity of the renewal notes of December 15, 1927; the defendant set up their invalidity as a defense; the Circuit Judge sustained the contention of the defendant; his conclusion, directing a verdict in favor of the defendant, is proposed to be affirmed in the opinion submitted by Mr. Justice Stabler upon the same ground.

I agree in the main, with the very elaborate and clear exposition of the law by the learned Justice, regarding the power of the Supervisor, to execute, as original and binding obligations of the county, the renewal notes in question; but I think that the evidence has developed circumstances tending to show the express or implied authority of the Supervisor to execute them, sufficient to require a submission of this issue to the jury.

As I shall endeavor to show later, there has developed no objection to the validity of the original notes; it must be assumed that the Treasurer and the advisory board knew of their execution and delivery to the bank; the money obtained from the bank upon them was deposited to the credit of the Treasurer and drawn out and paid to the Highway Commission in a lawful manner and to the konwledge, necessarily, of the fiscal agents of the county authorized to disburse it; they are presumed to have known of the maturity of the notes; evidently the proposed renewals and the necessary payment of the accrued interest for a year were within their knowledge; their silence until the failure of the bank in January, 1928, is significant, showing a ratification of what the Supervisor had done. But for that failure, doubtless nothing against the authority of the Supervisor would ever have been suggested. The truth of the matter is that the failure of the bank, the loss of the deposit of $20,000.00 and the double-dealing of the president of the bank have induced the effort to seek shelter under technical objections.

I think, however, it may be assumed that the renewal notes were executed by the Supervisor without authority of law,

and unauthorized and unratified by the legal fiscal agents of the county, and still it be held that the county is liable to the plaintiff bank upon the original notes, or the debt which is. evidenced by them.

There is no shadow of suspicion upon the original notes of December, 1926, of $10,000.00 each; counsel for the defendant admit that they were valid obligations of the county at the time of their execution and delivery to the Union bank, but assert that they had been paid: "Mr. Hamblin: I might state I was a member at that time and it was a legitimate obligation, and it was paid." (It nowhere appears, so far as I have discovered, that these original notes had been paid; they certainly were not paid by the execution of the renewal notes of December, 1927, for that only can be considered payment that produces payment. If he referred to the $20,000.00 note proposed to be substituted for the two $10,000.00 notes of December, 1927, I have discovered no evidence sustaining that statement; it may have been paid; I do not know; but whether paid or not makes no difference).

This occurred during the progress of the trial: "Mr. Haynsworth: There is no question, your Honor, of the validity of the note (original notes?); in Mr. Hamblin's answer he admits that. The Court: I don't think there is any question about that"; to which there was no reply.

Aside from the admission of counsel, the evidence abundantly shows not only that the original notes of $10,000.00 each were valid obligations of the county, given to raise the agreed sum to be paid under the reimbursement agreement with the Highway Commission, but that the proceeds were applied to the liquidation of that obligation.

I do not think that there can be a doubt but that if the Union Bank had not transferred the renewal notes of December, 1927, had brought suit upon them and had been met by the defense that the notes were invalid obligations of the county (for the reasons now urged against their validity), the bank would have been entitled, notwithstanding, to re-

cover upon the original valid notes for which the renewal notes had been given. When therefore the Union Bank assigned the renewal notes to the plaintiff bank, it assigned to it all right which it had by reason of the original transaction; the two $10,000.00 notes, admittedly valid, which were executed and delivered in December, 1926.

The point I think is covered by the eighth exception, which reads as follows: "He erred in not holding that the two notes sued on were executed in renewal of valid obligations of the county and were delivered for this purpose to Mr. Morgan, the President of the Citizens Bank and Trust Company, and that in the hands of the plaintiff, a purchaser for value, without notice, before maturity, the said notes constituted valid debts of the county."

In 1 Daniel Neg. Inst. (5th Ed.), § 748, it is said: "The assignment of any particular claim is considered an equitable assignment of all securities held by the assignor to assure it. Thus the assignment of a debt by whatever form of transfer, carries with it any bill or note by which it is secured; and the converse of the proposition is equally true, that the transfer by endorsement or assignment of a bill or note carries with it all securities for its payment, whether they exist by way of mortgage, deed of trust or otherwise. A renewal note has the benefit of any security for the payment of the original, whether by way of mortgage, deed of trust or otherwise, and the holder may enforce it, whether the renewal be for the whole or for part of the original, in the absence of any agreement to the contrary."

At Sec. 205, it is said: " * · * * And if the renewal note be a forgery, or be obtained by fraud, it does not discharge the original, although the original was surrendered up * * * and as a general rule the surrender of the preexisting note does not discharge it."

"Security for payment of note remains valid security for payment of renewal note." *Cohen v. Rossmoore*, 225 App. Div., 300, 233 N. Y. S., 196, 197.

"As the original note was undoubtedly a valid obligation, the execution of the renewal note was not a novation of the original debt, and made no change in it." *Bohning v. Caldwell* (C. C. A.), 10 F. (2d), 298, 299. (Certiorari denied, 271 U. S., 663, 46 S. Ct., 475, 70 L. Ed., 1139).

"The giving of a renewal note has no effect, in the absence of an agreement therefor, to discharge either the makers or indorsers of the original note, if, for any reason not chargeable to the wrong or fraud of the holder, the renewal proves invalid." *Farmers' Savings Bank v. Arispe Mercantile Co.,* 139 Iowa, 246, 117 N. W., 672, 23 L. R. A. (N. S.), 889, 130 Am. St. Rep., 324.

In this case, it was held that, assuming the renewal note was a forgery, the plaintiff could still recover upon the original note.

"The giving of one note in renewal of another is a continuance of the original indebtedness." *Johnson v. Grayson,* 230 Mo., 380, 130 S. W., 673.

"The renewal of a debt, or obligation therefor, does not amount to a satisfaction or discharge of the original obligation unless there has been some change in the security." *Adams v. Branch,* 3 Ky. Law Rep., 178.

"Successive renewals of a note without any change in the parties thereto merely extend the time of payment." *Bank of Monongahela Valley v. Weston,* 159 N. Y., 201, 54 N. E., 40, 41, 45 L. R. A., 547.

In *Bank v. Hart* (Quebec), 2 Dom. L. R., 810, it was held that when a note is renewed, the fact of such renewal does not operate as a novation, and it is immaterial whether the holder sues on the original note or on the renewal note; the remedy on the original note is merely suspended until the maturity of the new one. It appears to follow that, if the renewal note proves to be invalid, recovery may be had upon the debt evidenced by the original note.

Payment of a note by a new note, which proves invalid, does not discharge the original instrument. *Ramsdell v. Soule,* 12 Pick. (29 Mass.), 126; *Williams v. Gilchrist,* 11 N. H., 535; *Hughes v. Wheeler,* 8 Cow. (N. Y.), 77; *Central City Bank v. Dana,* 32 Barb. (N. Y.), 296.

Where a new note accepted in satisfaction of a prior note is void, and cannot be legally enforced, the party holding it is remitted back to his original rights as they existed at the time the new security was taken. The consideration failing, the indebtedness remains unaffected. *Sheppard v. Hamilton,* 29 Barb. (N. Y.), 156.

Where a valid note was given up on being made the consideration of a note which was afterwards avoided as usurious, the surrendered note, or the consideration for which it was given, may be recovered from the maker. *Edgell v. Stanford,* 6 Vt., 551.

*Jones v. City of Camden,* 44 S. C., 319, 23 S. E., 141, 143, 51 Am. St. Rep., 819, was a case where the City of Camden was about to issue bonds in renewal of other bonds, the original bonds having been issued for money used in the purchase of a lot and the erection of a town hall. The Court held that the original bonds were issued for a municipal purpose and were valid, and concluded with this statement: "If, therefore, the bonds originally issued were valid obligations of the municipal corporation, as we think they unquestionably were, then bonds issued to pay or renew such valid obligations were alike valid, because issued for a corporate purpose, viz.: to pay or retire a valid debt of the corporation."

In *Thackston v. Goodwin,* 79 S. C., 396, 60 S. E., 969, the Court held that the county commissioners could, without special act or authority, issue renewal bonds for the purpose of refunding or paying maturing railroad aid bonds.

In *Luther v. Wheeler,* 73 S. C., 83, 52 S. E., 874, 877, 4 L. R. A. (N. S.), 746, 6 Ann. Cas., 754, the Town of

Prosperity issued its note to the Palmetto Bank & Trust Co. for $1,000.00, and received thereon $960.00, which was used in erecting a municipal building. The note was renewed several times, and then was purchased by the Bank of Prosperity. The town was about to renew this note when this proceeding was brought in the original jurisdiction to enjoin the council from issuing the renewal note.

The Court held that the council had no authority to borrow money on its promissory note for the erection of the building, but that it did have authority to erect the building and contract a debt for this purpose, and that the town was bound for the repayment of the $960.00 with interest; that while the note was invalid, it was a symbol of the debt, and that the Bank of Prosperity was the owner of the debt, and was allowed to recover $960.00 with interest. The Court said: "Regarding the note entirely void, and therefore eliminated from the transaction, it is still to be considered whether the bank could recover the amount loaned for which the note was given, as money had and received by the town; not because it had been loaned to the town, or because its officers had borrowed it and promised to pay it, but because it was money of another used by the town for legitimate corporate purposes authorized by law. * * * The right to such a recovery is supported by the weight of authority, as will appear by reference to the following citations, though it has been denied, as we have seen, by Courts whose opinions should receive great consideration. 1 Dillon on Munic. Corps., § 126, note, and Sections 460-461; 20 A. & E. Ency. Law., 1158; Keener on Quasi-Contracts, 272; *Marsh v. Fulton County*, 10 Wall., 676, 19 L. Ed., 1040; *Salt Lake City v. Hollister*, 118 U. S., 256, 6 S. Ct., 1055, 30 L. Ed., 176; *Parkersburg v. Brown*, 106 U. S., 487, 1 S. Ct., 442, 27 L. Ed., 238; *Chelsea Savings Bank v. City of Ironwood*, 130 F., 410, 66 C. C. A., 230; *Allen v. Intendant of La Fayette* [89 Ala., 641], 8 So., 30, 9 L. R. A., 497. * * *

If the general principles of law above stated are applied to these facts, the conclusion is obvious that the Bank of Prosperity as the equitable assignee of the Palmetto Bank & Trust Company could recover against the town the sum advanced as money had and received by the town for its benefit."

In *Clark v. Young*, 231 Mass., 156, 120 N. E., 397, 398, the Court said: "If the renewal notes were forged they did not operate as payment of the original valid notes. The plaintiff was indebted to the Trust Company in the same amount whether the renewal notes were forged or genuine." Citing *Walker v. Mayo*, 143 Mass., 42, 8 N. E., 873; *Central Nat. Bank v. Copp*, 184 Mass., 328, 68 N. E., 334; *Bass v. Inhabitants*, 192 Mass., 526, 78 N. E., 543.

There is a case from Kentucky, *First Nat. Bank v. Gaines*, 87 Ky., 597, 9 S. W., 396, which is strongly opposed to the right of the plaintiff who has pitched his action solely upon the renewal notes to recover upon the original notes. It recognizes the right of the assignee of a renewal note to sue upon the original, but, as a matter of pleading, denies the right in the particular case. I think that it is opposed to the South Carolina and other cases cited above.

Under the circumstances, when the ultimate right of the plaintiff to recover is so absolutely clear, the utmost that could be adjudicated against its rights would in this case be to direct a nonsuit instead of a directed verdict. In any event, it should be made clear that an affirmance of the judgment be without prejudice to the plaintiff's right to sue upon the original notes or upon the debt evidenced thereby, or, as was done in the *Luther case*, as equitable assignee of the Union Bank's claim for money had and received by the county, the proceeds of the original notes.